## VITTITOE v. JUNKIN et al.
### No. 8878.

Court of Civil Appeals of Texas. San Antonio.

Oct. 19, 1932.

Rehearing Denied Nov. 16, 1932.

Graham, Graham & Graham, of Brownsville, for appellant.

Criss & Brown, of Harlingen, for appellees.

FLY, C. J.

This suit was instituted by J. K. Junkin against E. M. Lawson and Mary S. Vittitoe, a feme sole, to recover a debt in the sum of $10,695.36, and to foreclose a vendor's lien on certain lots in the city of Brownsville. It was alleged that Lawson was insolvent and that his residence was unknown. It was alleged that Mrs. Loa E. Junkin was the wife of J. K. Junkin, and conveyed the lots for which the note was given to J. K. Junkin. The wife, although not instituting the suit, became the storm center around whom much of the case revolved, the husband assuming a rather minor and obscure part in the transaction. Appellant pleaded a conspiracy between appellees, the Junkins and Lawson, to defraud her of her property and introduced testimony tending to prove her allegations. Her defense was rejected and judgment rendered against her as prayed for in the petition.

The facts show that on an unfortunate day for appellant, while she was traveling along a highway in —— county, an acci-dent happened to her automobile, which had attached to it a California license plate. While waiting in the road, waiting, as did Micawber, "for something to turn up," very much of something did "turn up" in the person of E. M. Lawson, who was passing by in an automobile and stopped and offered his services. In assisting about the car his vigilant eye noted the California license plate and he turned the conversation in that direction. Appellant guilelessly confided to him that they had gone to California with the purpose of leaving the "Texas Valley" and had come back to settle her affairs in this state. She told Lawson that she owned 120 acres of land in the valley, which she desired to sell. She confided to him what she desired to obtain for the land, where she was stopping at the time, and other details of her private business. He eagerly devoured all the information and offered his services in the disposal of the property. Lawson followed up his meeting with appellant by ingratiating himself into her good graces until he managed to get her to trade her land for apartment property in Brownsville, and through circuitous dealings deprived her of the apartment. So appellant was left with nothing except possibly the automobile with a California label on it. Lawson, who had claimed to own a ranch of 4,000 acres in California, the land of the setting sun, where even 5 acres of land, or less, is dubbed a ranch—an imperial ranch—and also claimed possessions in Missouri and perhaps in other locations, disappeared when the day of reckoning had come, and like his possessions melted into thin air. He is not a party to this suit, and his deception and fraud are not material except in so far as appellees, and especially Mrs. Junkin has been shown a participant in the fraud.

Whatever amount Lawson obtained through the fraud practiced on appellant, he must have carried off with him, for he has no land or houses, and the picture is presented of the appellant deprived of a valuable tract of land in the rich valley of the Rio Grande, rich as the valley of the Nile, where the orange and the pomelo and the lemon flourish and obtain a perfection unknown elsewhere in America, and nothing to show for it except a rooming or apartment house, on which there is a vendor's lien to secure a debt of more than $16,000. That indebtedness is held by appellees, the Junkins, along with the valley land.

It was charged that the Junkins had entered into a conspiracy with Lawson to defraud appellant out of her land by inducing her to trade it for the property in Brownsville, which was represented to be free of all indebtedness. Mrs. Junkin was the moving force in negotiations for an exchange of the 120 acres of land near San Benito for.

the apartment house owned by her in Brownsville. She induced appellant to go with her to the apartment, as she said, to see about a stove, but on the way picked up Lawson, and she and Lawson, after reaching the apartment, proceeded to extol the desirableness of the property as an investment. She claimed that she always had no trouble to obtain tenants. The conversation was absorbed by appellant and she swallowed all the representations without question. She conveyed her land to Lawson in exchange for the apartment, ignorant of the fact that her land had been transferred to Mrs. Junkin and that a mortgage had been placed on it for $10,000, and that a note for $10,000 had been executed by Lawson secured by a vendor's lien on the apartment. Mrs. Junkin was active in coming in contact with appellant. She developed a social interest in the Vittitoe family, and made a social call on them. Lawson invited appellant to take a soda water with him and Mrs. Junkin appeared on the scene and also imbibed. When the smoke cleared away, Mrs. Junkin had all the property and Miss Vittitoe had nothing. A lien was declared on the furniture which Mrs. Junkin had represented had been purchased and paid for by her. In the face of all the circumstances enumerated and others, the court instructed a verdict in favor of appellees. This we think was error, requiring a reversal of the judgment.

█ Those engaged in forming conspiracies against governments, or the rights of others, do not proclaim their purpose on the hilltops or the highways, but proceed in dark and devious ways to accomplish their unlawful designs. It is, therefore, always difficult to prove the existence of a conspiracy, and great latitude must be indulged to permit proof of every circumstance, however trivial when standing alone, tending to show a conspiracy.

█ The facts in this case were ample to take the case to a jury. San Antonio Gas. Co. v. State, 22 Tex. Civ. App. 118, 54 S. W. 289, 292; American Rio Grande Land & Irr. Co. v. Barker (Tex. Civ. App.) 268 S. W. 506; Tex. Jur. vol. 9, § 21, p. 400, and authorities cited. The case first cited is in point, and we reiterate what was said therein as follows:

"Conspiracies, being in defiance of law, are conceived in secrecy, and executed in such a manner as to avoid detection and exposure; and proof of such unlawful enterprises must, in the very nature of things, be made by circumstances, and every circumstance which tends to cast light upon the transaction is legitimate and proper. * * *

"It is a well-settled rule of evidence that, when the testimony establishes a conspiracy, the acts and declarations of a co-conspirator made in furtherance of the common design, are admissible against all of the conspirators. 'The principle on which the acts and declarations of other conspirators, and acts done at different times, are admitted in evidence against the person prosecuted, is that, by the act of conspiring together, the conspirators have jointly assumed to themselves as a body the attribute of individuality so far as regards the prosecution of the common design; thus rendering whatever is done or said in furtherance of that design a part of the res gestæ, and therefore the act of all.' 3 Greenl. Ev. § 94."

The rule is clearly and forcefully stated by Judge Wheeler in Jernigan v. Wainer, 12 Tex. 189.

The court said: "When men enter into conspiracies, they are not likely to call in a witness. They resolve their schemes clandestinely and in secret. Their purpose is imposition and deception; and secrecy is necessary to its accomplishment. In such cases the injured party must necessarily have recourse to circumstantial evidence. For it is only by the inferences and deductions which men properly and naturally draw from the acts of others in such cases, that their intentions can be ascertained. They are not likely to proclaim them in the hearing of witnesses."

The judgment is reversed and the cause remanded.