**WHITEHEAD v. TRADERS & GENERAL INS. CO.**

No. 5030.

Court of Civil Appeals of Texas. Amarillo.

May 8, 1939.

Clyde Vinson and B. A. Carter, both of San Angelo, for appellant.

Lightfoot, Robertson, Gano & Johnston, of Fort Worth, for appellee.

JACKSON, Chief Justice.

This suit was instituted in the District Court of Tom Green County by the appellant, C. B. Whitehead to recover the balance alleged to be due him evidenced by a judgment obtained by him in the District Court of Tom Green County against E. D. Rhea.

The appellee in due time filed its plea of privilege which after a hearing was sustained and the case transferred to the District Court of Dallas County and no complaint is made of such action.

The appellant filed his first amended original petition in the District Court of Dallas County to which the court sustained the general demurrer urged by appellee, he declined to amend, the case was dismissed, and from this action of the court this appeal is prosecuted.

He alleged that on or about October 8, 1935, and prior thereto he and E. D. Rhea were both common carriers operating trucks in the State of Texas under certificates of convenience and necessity issued by the Railroad Commission of the State for the transportation of freight; that they were connecting carriers and had a contract for the interchange of freight and the handling of C. O. D. shipments whereby each was to accept from the other freight to be transported and delivered to the consignee, collect the C. O. D. charges therefor and the freight thereon and remit to the initial carrier; that appellant delivered to E. D. Rhea under this agreement and contract at San Angelo, Texas during the months of January and February, 1935 C. O. D. shipments of certain consignors to be delivered at Big Spring, Texas to certain consignees; that the merchandise so delivered to E. D. Rhea consisted of intoxicating liquors which were delivered to the consignees by E. D. Rhea who collected from them the C. O. D. charges therefor and also certain freight thereon but he failed and refused to remit to the consignors or appellant the money so collected but converted it, the items of which aggregated $1926.71, to his own use and benefit and on account of the conversion and misappropriation of said money appellant was compelled to pay to each consignor the money due him from the consignee; that each consignor assigned his claim to appellant, and in Cause No. 9532–B in the District Court of Tom Green County he recovered judgment against E. D. Rhea for the sum above stated on which he has collected $118.74; that appellee had issued to E. D. Rhea a policy of insurance under Article 911 B, Section 13 of the revised civil statutes, and the policy was in full force and effect during the period said merchandise was delivered to and transported by E. D. Rhea, the C. O. D. moneys therefor collected and converted.

The appellant pleaded certain provisions of the policy material to his cause of action, the meaning of some of which we shall state substantially and others we shall quote haec verba.

The policy indemnifies the assured, E. D. Rhea, against liability imposed by law arising or resulting from claims for personal injuries, or damage to property by reason of the ownership, use or maintenance of the motor vehicles enumerated therein while operated for the purposes stated.

The policy was issued subject to certain conditions, limitations and agreements, among which are that the insurer shall not be liable to pay any loss until a final judgment shall have been recovered against the assured in a court of last resort; that the insolvency of the insured shall not release the insurer from liability, and a judgment creditor has the same right of recovery on such judgment as has the insured, but among the limitations of liability it is expressly provided that the policy does not cover "liability of others assumed by the assured under any contract or agreement, oral or written."

Under "Endorsement (Cargo and C. O. D. Coverage)" are the following provisions:

"It is understood that the policy to which this endorsement is to be offered for filing by the above named assured with the Railroad Commission of Texas, in compliance with the law, as a condition precedent to the issuance of a certificate of convenience and necessity to operate as a motor carrier within the State of Texas under the provisions of Chapter 314, General and Special Laws of the Forty-First Legislature of

Texas, 1929; and this endorsement is attached for the purpose of making the provisions of the policy conform to the requirements of the law. * * *

"Anything in the policy to the contrary notwithstanding, it is hereby agreed that the assured will be indemnified against loss by reason of his liability at common law or by the Act above mentioned, and particularly under Section 13, thereof, for any loss or damage by reason of the death or of personal injury to any person, or loss of, damage to, the property of any person (other than the assured and his employees), growing out of the actual operation of the motor vehicles or trucks and/or trailers covered under this policy.

"It is also understood, anything in this policy to the contrary notwithstanding, that the insurer herein will pay all damage which may be recovered against the assured based on the claim for loss or damage of property or injury to property while such property is in the possession and/or custody of the assured, and for the failure to account for property shipped as C. O. D. shipments or for failure to return the cash collected therefor arising out of the actual operation of such motor vehicles or trucks and/or trailers without regard to the solvency or insolvency of the assured and this policy shall not be exhausted by one recovery but successive recoveries may be had hereunder. * * *

"The approval of the Railroad Commission of Texas of this policy as endorsed may be withdrawn at a later date when the Board of Insurance Commissioners shall have adopted a standard form of policy covering the insurance hazards contemplated in this contract."

Under "Endorsement (Indemnity for Cargo Shipment)" it is provided:

" * * * This policy is hereby extended to cover the legal liability of the assured to the owner and shipper of merchandise as defined in the (cargo) endorsement hereto attached for an amount not exceeding one thousand dollars ($1000.00) on account of the failure of the assured or any regularly paid employee of the assured to deliver to consignee such merchandise after same has been delivered to said assured by said shipper and/or failure of said assured to correctly account to said shipper or owner for any funds or collections received by the assured or an agent of the assured pursuant to request of the shipper and commonly termed C. O. D. shipment. Provided,

however, that this company shall not be liable for any loss under this endorsement on merchandise or the collection thereon, if such merchandise is excluded from the coverage under the (cargo) endorsement hereto attached. * * *

"This endorsement insures against loss or damage directly caused by:"

(a) Fire, etc; (b) flood, etc.; (c) tornado, etc.; (d) sinking, etc.; (e) collision, etc.; (f) overturning, etc.; (g) collapse of bridges.

However, the policy expressly stipulates that: "This endorsement does not insure * * * Loss or damage to wines, liquors, spirits and/or intoxicating beverages."

Section 13 of Article 911b, Vernon's Ann. Civ.St., under which law the appellant alleges the insurance policy was issued, so far as essential to a disposition of this appeal, is as follows: "Before any permit or certificate of public convenience and necessity may be issued to any motor carrier and before any motor carrier may lawfully operate under such permit or certificate as the case may be, such motor carrier shall file with the Commission bonds and/or insurance policies issued by some insurance company including mutuals and reciprocals or bonding company authorized by law to transact business in Texas in an amount to be fixed by the Commission under such rules and regulations as it may prescribe, which bonds and insurance policies shall provide that the obligor therein will pay to the extent of the face amount of such insurance policies and bonds all judgments which may be recovered against the motor carrier so filing said insurance policies and bonds, based on claims for loss or damages from personal injury or loss of, or injury to property occurring during the term of said bonds and policies and arising out of the actual operation of such motor carrier, and such bonds and policies shall also provide for successive recoveries to the complete exhaustion of the face amount thereof and that such judgments will be paid by the obligor in said bonds and insurance policies irrespective of the solvency or insolvency of the motor carrier, provided, however, such bonds and policies shall not cover personal injuries sustained by the servants, agents or employees of such motor carrier. Provided further that in the event the insured shall abandon his permit or certificate and leave the State, a claimant, asserting a claim within the provisions of said bonds or policies, may file suit against the

sureties executing such bond or the company issuing such policies in a court of competent jurisdiction without the necessity of making the insured a party to said suit."

We are confronted first with the contention of appellee that appellant is estopped from assailing as error the action of the trial court in sustaining the demurrer to his petition since it was at his invitation and request that the general demurrer was sustained.

We find this language in appellant's brief: "When this case was called for trial in the District Court of Dallas County on the 18th day of April, 1939 appellant invited the court to sustain the general demurrer of appellee to appellant's petition, as seemingly the issue was purely one of law on the facts which appellee desired that the appellate court pass upon. The trial court thereupon sustained appellee's general demurrer to appellant's petition." The order shows that appellant excepted to such ruling and gave notice of appeal and thereafter filed his appeal bond.

■■ The law generally is that if a case be dismissed at the request of one of the litigants he cannot complain on appeal of such dismissal. Brightman v. Fry et al., 17 Tex.Civ.App. 531, 43 S.W. 60, writ denied. A party may not complain on appeal of a peremptory instruction given with his express consent. English v. City of Ft. Worth et al., Tex.Civ.App., 152 S.W. 179; Pope v. Commonwealth Bonding & Casualty Co., Tex.Civ.App., 166 S.W. 1195; Watts et al. v. Wofford et al., Tex.Civ.App., 239 S.W. 321.

In Grubbs et al. v. Nash, Tex.Civ.App., 275 S.W. 257, 258, the court says: "Appellee * * * having requested the jury to return a verdict against him, though under the law he might have been entitled to an instructed verdict, he cannot now complain of the court's action based upon the jury's verdict. His act in requesting the finding is an estoppel against him to complain of the verdict, and constitutes a waiver of the errors, if any, committed by the court in overruling his previous motion for an instructed verdict."

■ In Braden et al. v. State, Tex.Civ. App., 108 S.W.2d 314, 316, the court says: "* * * it is a well-established rule that one who has invited the court to enter a particular judgment, or by his own conduct has otherwise induced the trial court to commit error, is estopped to assert that the action of the court is erroneous, even though there has been an attempt to reserve the right to appeal. 3 Tex.Jur. 1028, 1031, and authorities there cited; 3 C.J. 671; 4 C.J.S., Appeal and Error, [§ 213] page 404; 2 R.C.L. 59; 2 Amer.Jur. P. 974; Texas Portland Cement & Lime Co. v. Lee, 98 Tex. 236, 82 S.W. 1025; Blume v. Shady-acres Investment Co. (Tex.Civ.App.) 83 S.W.2d 1026, par. 3; National Bank of Denison v. Kilgore, 17 Tex.Civ.App. 462, 43 S.W. 565; Gossett v. Hensley (Tex.Civ. App.) 94 S.W.2d 903, par. 4; Grubbs v. Nash (Tex.Civ.App.) 275 S.W. 257; Posey v. Plains Pipe Line Co. (Tex.Civ.App.) 39 S.W.2d 1100; Pair v. Buckholt (Tex. Civ.App.) 60 S.W.2d 463; Craighead v. Bruff (Tex.Civ.App.) 55 S.W. 764."

■ Under this record and these authorities the appellant is estopped from urging as error the action of the trial court in sustaining appellee's demurrer to his petition.

We think, however, that independent of the conclusion announced above the court correctly sustained the demurrer.

■ The policy sued on was submitted to and approved by the Railroad Commission of Texas, as the law requires, and it is admitted that E. D. Rhea delivered to each consignee the goods shipped to him by the consignor and there was neither loss nor damage to such shipments. The price collected by Rhea for these C. O. D. shipments was converted by him to his own use and benefit and it was for this conversion of the cash that appellant obtained his judgment in the District Court of Tom Green County.

The statute requires coverage on personal injuries or loss or damage to property but does not, in our opinion, contemplate indemnity against loss arising from the want of integrity or fidelity of an employee or parties holding a position of trust and hence does not include judgments recovered for failure to account for money collected by one motor carrier for C. O. D. shipments entrusted to it by a connecting motor carrier. According to appellant's allegations he delivered these shipments to E. D. Rhea under a contract between themselves for the exchange of freight for transportation and delivery, but the policy plainly stipulates that it does not cover "liability for others assumed by the assured under any contract or agreement, oral or written," and the contract between the two alleged con-

necting motor carriers, whatever its terms, would not enlarge the liability of appellee.

■ The provision in the insurance contract obligating the Company to pay losses for the failure to account for or return the cash collected for C. O. D. shipments since not required by the statute extended the coverage to losses not contemplated by the Legislators and are purely contractual. The policy, however, affirmatively excludes liability for the failure to account for the cash collected on the C. O. D. shipments inasmuch as it provides the Company shall not be liable for loss under the endorsement for merchandise or the collections thereon if such merchandise is excluded from the coverage under the (cargo) endorsement hereto attached and such cargo endorsement does not insure "loss or damage to wines, liquors, spirits and/or intoxicating beverages."

Employers' Fire Ins. Co. of Boston, Mass. v. McCrary, Tex.Civ.App., 108 S.W.2d 570, was a suit by the appellee against the appellant on a policy for a $195.00 judgment paid as the damages sustained to a shipment. After enumerating the losses against which the policy insured, the insurance contract contained this provision:

"This policy does not insure * * *

"(E) Loss or damage to goods by delay, wet, dampness, or by being spotted, discolored, mouldy, rusted, frosted, rotted, soured, steamed or changed in flavor except the same is the direct result of a peril insured against."

The court concluding that the policy did not cover the goods damaged by getting wet in a rain storm says: "The policy clearly specifies the items of perils against which loss or damage to such goods as might occur in transportation, and clearly states the items of peril against which loss or damage might occur to such cargo in the transportation, and against such loss or damage the policy does not insure. The loss or damage occurring to the goods by becoming wet is specifically excepted by the terms of the policy as not insured. The policy as written was accepted by the commission, and the mimeographed cargo indorsement was attached, and in the indorsement it is stated that in consideration of the premium stated (in the policy) the insurer waives the matter stated (not involved here), and agrees that this policy covers the legal liability of the named assured while operating as a motor carrier under the provisions of the above statute (previously referred to) for

the loss or damage or injury, on the motor freight vehicle, and the insurer agrees to pay all damage based on legal liability."

The policy under consideration explicitly excludes liability of the insurance company on "Loss or damage to wines, liquors, spirits and/or intoxicating beverages."

The petition of appellant affirmatively alleges that the merchandise shipped C. O. D., the price of which E. D. Rhea converted, were shipments of intoxicating liquor.

The judgment is affirmed.