## BOYD v. CHICAGO, R. I. & P. RY. CO.

### No. 5284.

Court of Civil Appeals of Texas. Amarillo.
March 31, 1941.

O. O. Franklin, of Coleman, for appellant.

Stone & Stone, of Amarillo, for appellee.

JACKSON, Chief Justice.

This suit was instituted by the appellant, Ed Boyd, in the Forty-seventh District Court of Potter County against appellee, the Chicago, Rock Island & Pacific Railway Company, hereinafter designated as the Rock Island, to recover the sum of $4,720 for the death of Boyd's son, Richard Murphy Boyd, hereinafter called Pete Boyd, alleged to have been occasioned by the negligence of the employees of the Rock Island.

The appellant alleges that on September 24, 1939, Pete Boyd, his son, was on the track of the railway company, when a Rock Island train coming into Amarillo from the west struck and killed Pete; that the employees in charge of the train failed to keep a proper lookout, failed to blow the whistle or ring the bell, operated the train at an excessive and dangerous rate of speed, each of which acts constituted negligence and a proximate cause of the death of Pete Boyd.

In the alternative appellant pleaded that the employees of the Rock Island discovered his son upon the track and could have, by the exercise of ordinary care with the means at hand, avoided striking and killing his son and such negligence was a proximate cause of his death.

The allegations as to relationship, age, earning capacity and contribution to the

support of the father by the son are sufficient.

The appellee answered by general demurrer, special exceptions, general denial and pleaded the contributory negligence of Pete Boyd in sitting on the railroad track.

The case was tried to a jury and at the close of the evidence, in obedience to a peremptory instruction, the jury returned a verdict in favor of appellee and from the judgment rendered thereon this appeal is prosecuted.

The record discloses that the Rock Island tracks enter Amarillo from an easterly direction, continue through the city and on in a westerly direction; that a dump or fill twenty or more feet in height has been constructed on which the Rock Island tracks are laid within the city limits; that there is a gap or opening in this fill spanned by a steel bridge and this gap under the bridge forms an underpass through which the Fort Worth & Denver City Railway Company operates its trains; that the bridge and fill constitute an overpass along which the Rock Island operates its trains. It is about 2,000 feet west of this bridge to what is known as a grade crossing, though there are two highway underpasses west thereof. Pete Boyd was sitting facing north on the north rail of the Rock Island tracks some 40 or 50 feet west of the west end of this steel bridge humped over and appeared to be holding his head in his hands. According to the witnesses who testified on the subject, he was first seen on the track about 7 A. M. on the morning of the 24th prior to being struck by the train about 8:40 A. M. The train was running in an easterly direction at a speed estimated by the trainmen to be approximately 30 miles per hour and by Willie Parker, a witness for appellant, at 45 or 50 miles per hour. The conductor said the whistle blew and the bell rang before the train struck the deceased and estimated that the brakes were applied while the part of the train on which he was riding, the coach behind the baggage car, was approximately 500 feet west of the bridge. The switchman testified that in his opinion the engine was within 250 feet of the deceased when he first discovered him and the engineer stated that in his judgment the engine was about 200 feet from where Pete Boyd was sitting when he first saw him. The fireman and engineer each testified to keeping a careful lookout but that the deceased was dressed in dark clothes, sitting in a position on the track between him and the banisters of the steel bridge which to some extent interfered with their view; that when they saw him the whistle was blown immediately and the emergency brakes applied but with the equipment on the train it would require from 650 to 700 feet to bring the train to a stop. Two disinterested witnesses, Mrs. Myrtle Watson and Mrs. Dodson, testified that the whistle of the engine was blown some distance before the train struck Pete Boyd but stated they were unable to estimate the distance. The testimony shows that a negro man went on the track where Pete Boyd was sitting and talked to him some time before the train came but what he said or the purport thereof the witness was not near enough to ascertain. Willie Parker testified that he saw Pete Boyd early that morning going up the dump, called him back and asked him if he were drunk and offered to take him home, but that the deceased told him he was not drunk, was going home and went on up the fill to the track. The witness was on his way to what he called the North Heights and was gone some twenty or thirty minutes, he says, and as he returned, while crossing the Fort Worth & Denver City tracks northwest of where the collision occurred, he looked and saw Pete Boyd jump up and try to run across the track as the train struck him; that he did not hear the bell ring nor hear the whistle of the engine blow until just as it hit the deceased. He said he was some three blocks from the collision but the map of the city introduced by appellant shows that if Parker were where he says when he saw the collision he was nearly 1,500 feet away and it would have required one and one-third seconds, at least, under the weather conditions, for the sound of the whistle to reach him and since the train was traveling, according to this witness, at a speed of 45 or 50 miles per hour the train would, in the time required for the sound to reach the witness, have gone approximately 88 feet. If traveling at a speed of 30 miles per hour, as said by the trainmen, it would have gone approximately 58 feet before hitting the deceased. The testimony, therefore, is uncontroverted that the whistle was blown by the trainmen before the deceased was struck. The only controversy is the distance the train was from the deceased when the whistle was first blown.

Pete Boyd, who was thirty-five years of age, was at midnight preceding his death ordered to leave a beer joint. He said he was not drunk but left and the next time he was seen he was going upon the fill to the railway track where he sat until he was struck and killed about 8:40 A. M.

The testimony shows without dispute that the deceased was dressed in dark clothes, was sitting on the north rail of the Rock Island track; that he was bowed over apparently with his head in his hands; that he had been there something like an hour and a half before he was killed. If there is any explanation for his sitting on the track it must be gleaned from the testimony above related.

■ There is some controversy about whether there was a trail or a path over the fill at the west end of the bridge and whether or not there was a trail that extended along the rails westerly but, in our opinion, it is immaterial whether the deceased was a trespasser or a licensee. The evidence shows no reason or excuse, much less justification, for the deceased to sit on the rail of the track. He was there voluntarily and whether drunk, asleep or unconscious from some other cause, or intentionally remained in that position, he was guilty of contributory negligence as a matter of law.

In Cobb et al. v. Texas & N. O. R. Co., Tex.Civ.App., 107 S.W.2d 670, 673, it is said:

"This court finds that the only reasonable conclusion to be deduced from the evidence is that deceased had voluntarily gone upon the track, sat down, and fallen asleep.

"Any acts of negligence that may have been committed by appellee's train operatives, prior to the discovery of deceased on the track and the realization of the fact that he was in a dangerous and perilous condition, from which he would not or could not escape by his own act, are rendered nugatory, for the reason that, as a matter of law, deceased was guilty of contributory negligence, barring recovery because of such antecedent acts of negligence. Appellants therefore are relegated entirely to their pleading of 'discovered peril.' San Antonio Traction Co. v. Kelleher, 48 Tex. Civ.App. 421, 107 S.W. 64; Dallas Ry. & Term. Co. v. Bankston (Tex.Com.App.) 51 S.W.(2d) 304, 308; Northern Texas Traction Co. v. Weed (Tex.Com.App.) 300 S. W. 41; Northern Texas Traction Co. v. Singer (Tex.Civ.App.) 34 S.W.(2d) 920, 923."

In Texas & N. O. R. Co. v. Daft, Tex. Civ.App., 120 S.W.2d 481, the court holds that a license to cross the tracks of a railroad does not include the privilege of sleeping upon the track and if used for that purpose the party is guilty of contributory negligence. This is equally true of one voluntarily sitting on the track. Roper v. Texas Central R. Co., 55 Tex.Civ.App. 620, 119 S.W. 696; Baker v. Loftin et al., Tex. Com.App., 222 S.W. 195.

The appellant contends that the court erred in directing a verdict in favor of appellee because the pleadings and testimony presented the issue of discovered peril which should have been submitted to the jury for determination.

■ In Baker v. Shafter, Tex.Com. App., 231 S.W. 349, 350, the Commission of Appeals says: "The doctrine of discovered peril involves three elements, viz: (1) The exposed condition brought about by the negligence of the plaintiff; (2) the actual discovery by defendant's agents of his perilous situation in time to have averted—by the use of all the means at their command, commensurate with their own safety—injury to him; and (3) the failure thereafter to use such means."

In Galveston, H. & S. A. Ry. Co. v. Price, Tex.Com.App., 240 S.W. 524, 528, the Commission of the Supreme Court holds: "It is well settled in this state that the doctrine of discovered peril does not arise unless the perilous position of the party injured becomes actually known to the defendant's agents in time to avoid injury by the exercise of ordinary care in the use of all means at hand. [Ft. Worth & D. C.] Railway v. Shetter, 94 Tex. 196, 59 S.W. 533; Baker v. Shafter, above. Mere duty to discover under the circumstances will not raise the issue. * * * The burden of proof is on the plaintiff in such cases to establish the facts warranting recovery upon this issue, including the fact of actual discovery of the peril. * * * In order to warrant a finding that the engineer, the only member of the crew who could have seen Mr. Price, discovered him in a perilous position just before he was struck, we will also have to assume that he deliberately permitted the train to run on some distance without any effort whatever to stop it—an act of inhumanity which we think

should never be imputed to one in the absence of some proof that he was guilty of it. Certainly such an act could not be assumed merely from the fact that the engineer was in a position where he could have seen Mr. Price if he had been making the proper lookout ahead."

See, also, Houston & T. C. Ry. Co. v. O'Donnell, 99 Tex. 636, 92 S.W. 409; San Antonio & A. P. Ry. Co. v. McMillan, 100 Tex. 562, 102 S.W. 103; Aranda et al. v. Texas & N. O. R. Co., Tex.Civ.App., 140 S.W.2d 236.

We do not believe that we could express more clearly the law which charges the deceased with contributory negligence or the law that acquits the appellee of liability under the rule of discovered peril than what is said in the opinions quoted and cited. We therefore refrain from any attempt to elaborate.

■ We are cognizant of the rule that a jury may discard the testimony of interested witnesses but in this case the testimony of the train operatives is corroborated by other witnesses as well as the physical facts and circumstances. While a jury is permitted to disregard the evidence of interested witnesses it is not allowed after discarding such testimony to find a verdict contrary thereto without testimony from some source to warrant their finding.

■ The appellant in his original brief presented only the proposition of discovered peril. Long after the time had elapsed for filing a brief he filed a motion requesting that he be allowed to file an amended brief which contains additional propositions, statements and authorities. In fact, he offers a complete brief. The only reason urged for failing to comply with the law and file his brief on time is that he was so occupied with his business that he was unable to properly brief the case within the period prescribed by statute. He did not comply with Rule 37 providing for the amendment of a brief. He presented no legal reason for filing his amended brief and his motion is overruled. Murphy et al. v. Moseley, Tex.Civ.App., 11 S.W.2d 234; Greene Gold-Silver Co. et al. v. Silbert, Tex.Civ.App., 158 S.W. 803; Glover v. Houston Belt & Terminal Ry. Co., Tex.Civ. App., 163 S.W. 1063.

The judgment of the trial court is affirmed.