**COMMERCIAL STANDARD INS. CO. v. GRUVER et al.**

No. 5890.

Court of Civil Appeals of Texas. Amarillo.
Nov. 22, 1948.

Rehearing Denied Jan. 10, 1949.

Underwood, Wilson, Sutton, Heare & Boyce, of Amarillo, for appellant.

Sanders, Scott, Saunders & Smith, of Amarillo, for appellees.

LUMPKIN, Justice.

We handed down an opinion in this case on September 27, 1948. The appellant has filed a motion for rehearing, and upon further consideration of the entire record, we have concluded we were in error in the conclusion reached. The original opinion is therefore withdrawn and the following opinion substituted therefor:

The question to be determined in this case is whether the appellant, Commercial Standard Insurance Company, is liable for $826.35, the amount of c. o. d. charges allegedly due the Westerfield Truck Line by various consignees and not remitted to the consignors, J. H. Gruver and L. H. Gruver, the appellees herein.

G. W. Westerfield was the owner of the Westerfield Truck Line, an organization operating a line of trucks as common carriers in both intra and inter-state commerce. The principal office of the truck line was at Amarillo, Texas, and the area served was generally the northern part of the Panhandle of Texas and portions of western Oklahoma. The Westerfield Truck Line had its terminus at Woodward, Oklahoma, and merchandise being shipped to parts of Oklahoma and Kansas not served by this truck line was carried from Woodward by the Vincent Truck Line and the Logue Truck Line. Each of these truck lines had its principal office at Wichita, Kansas.

It appears that the Westerfield Truck Line received from the appellees eleven shipments of merchandise consigned to persons residing at addresses not served by the Westerfield Truck Line. Ten of these destinations were in Oklahoma and one was in Kansas, and each of these addresses was served either by the Vincent Line or the Logue Line. These shipments were made from the appellees' place of business, J. H. Gruver and Son, at Gruver, Hansford County, Texas, and in each case the bill of lading was marked c. o. d. (collect on delivery). According to the agreement existing between Westerfield and the Vincent and Logue Lines, it was understood that the Westerfield Truck Line would deliver the shipments at Woodward, Oklahoma, to whichever of the connecting truck lines served the place to which the merchandise was being shipped, and that the connecting truck line would deliver the merchandise to the proper address, after collecting from the consignee the purchase price of the merchandise together with the cost of transportation. Subsequently, it was contemplated that the connecting carriers would remit the purchase price of the merchandise to Westerfield Truck Line who in turn would remit it to the appellees. The record discloses that the Westerfield Truck Line never remitted any of the various sums of money involved in any of these eleven transactions to the appellee nor, for that matter, was any of the merchandise ever returned to the consignors.

On August 13, 1943, prior to the time these shipments were made, Westerfield filed with the Railroad Commission of Texas a bond in the amount of $1,000, signed by G. W. Westerfield as the principal, and the appellant, Commercial Standard Insurance Company, as surety. By successive renewals, and covering the period in which the eleven shipments were consigned to the Westerfield Truck Line, the bond was extended to August 13, 1946.

In part the bond reads as follows:

"Whereas, the Railroad Commission of the State of Texas has authorized the making of a bond to cover any loss of money accruing to a shipper from c. o. d. shipments;

"Now, therefore, G. W. Westerfield dba Westerfield Truck Line, as Principal, and the other undersigned as surety, are held and firmly bound in the penal sum of One-Thousand and no/100 Dollars ($1,000.00) payment of which we will well and truly make to any shipper making a c. o. d. shipment with the principal herein while acting as a motor carrier under the aforesaid act.

"The condition of this bond, however, is that the principal and the surety herein will pay to the extent of the above amount of this bond all judgments which may be recovered against the principal or its assigns or successors, based on claims of any shipper for failure to return and/or account for monies collected by the principal, or its assigns or successors, on c. o. d. shipments while acting as a motor carrier under the aforesaid act, and upon the payment of such claims, this obligation is to be null and void, otherwise the same is to remain in full force and effect for one year from date hereof."

In their petition the appellees alleged that the c. o. d. bond was made in pursuance to the terms and provisions of House Bill 654, Chapter 314 of the Acts of the Regular Session of the Forty-first Legislature of the State of Texas, art. 911b, Sec. 13, Vernon's Annotated Civil Statutes; and that by the terms of this bond the appellant, Commercial Standard Insurance Company, guaranteed the payment of all c. o. d. deliveries made to the Westerfield Truck

Line. The appellees pleaded that the sum due them for the eleven shipments was $826.35.

The appellant answered that it was only liable for those sums of money which the principal, G. W. Westerfield, actually collected and failed to account for; and since the monies sued for were never actually received by Westerfield, the bond fails to impose liability on either Westerfield or the appellant.

The record shows that Westerfield sold his truck line on November 30, 1945, and that at the time this case was filed he had left the state and was residing in the State of Colorado.

The trial court submitted two fact questions to a jury. In subdivision (a) of special issue number 1 the court inquired of the jury whether Westerfield Truck Line delivered the merchandise to another truck line for delivery to the consignees. The jury answered, "Yes."

Subdivision (b) of special issue number 1 reads as follows: "If so, then do you find from a preponderance of the evidence that the truck lines that handled the merchandise in question, after it was delivered to them by the Westerfield Truck Line, if it was so delivered, have failed to pay to the Westerfield Truck Line the price that was due to be paid by the purchasers for such merchandise." The jury wrote, "No."

Upon this verdict the court rendered judgment for the appellees to which appellant excepted, gave notice of appeal, filed its appeal bond and the case is now before this court for disposition.

The appellant attacks the court's judgment in three points of error contending first as follows: "The liability of the defendant was measured strictly by the terms of its bond. Under such bond it assumed liability only for such c. o. d. items as its principal, G. W. Westerfield, collected and failed to return or account for. There was no evidence that the principal, G. W. Westerfield, ever collected the monies in question so as to impose liability on defendant as his surety, nor was the evidence sufficient to raise a fact issue upon this point.

The defendant was therefore entitled to judgment as a matter of law."

■ Appellant insists that since the bond is not required by the statute, that the liability of the surety did not have its origin in the statute and, therefore, the bond was purely contractual in its nature. It will be noticed that the bond provides that "the principal and the surety * * * will pay to the extent * * * of this bond * * * based on claims of any shipper for failure to return and/or account for monies collected by the principal, or its assigns or successors, on c. o. d. shipments while acting as a motor carrier under the aforesaid act * * *" The appellant points out that art. 911b, Sec. 13, V.A.C.S., provides that the insurance policies and bonds required as a requisite for a permit or certificate is to be based on claims for "loss or damage from personal injury or loss of, or injury to property occurring during the term of said bonds and policies and arising out of the actual operation of such motor carrier * * *." The appellant cites Whitehead v. Traders and General Ins. Co., Tex.Civ.App., 128 S.W.2d 429, in which this court held that c. o. d. bonds were not required by this statute. That opinion points out that c. o. d. bonds are not statutory bonds but are contractual in nature. This case comes within the rule—the bond sued upon is a contract of suretyship rather than a contract of insurance. Under such a classification the liability of the surety can only be measured by the terms of the contract, and thus the appellant's liability extends only to such c. o. d. items as its principal G. W. Westerfield, collected and failed to pay to the appellees. Standard Accident Ins. Co. v. Knox, 144 Tex. 296, 184 S.W. 2d 612.

■ What monies did Westerfield receive from the connecting carriers and fail to pay to the appellees? In answer to subdivision (b), special issue number 1, the jury found that the connecting truck lines did not fail to pay Westerfield Truck Line the purchase price of the merchandise, which is another way of saying that the jury found by a preponderance of the evi-

dence that the Westerfield Truck Line was paid by the connecting truck lines the purchase price of the merchandise consigned to it by the appellees. If there is evidence of probative force to support this jury finding, it is binding on the parties as well as on this court. McLean et al. v. McCollum, Tex.Civ.App., 209 S.W.2d 959, writ refused n. r. e.

Westerfield was the only witness who testified on this subject. He stated that he had received the merchandise in question from the appellees for shipment; that he had delivered the merchandise to the connecting lines at Woodward, Oklahoma; that he did not receive the monies for this merchandise from either the Vincent or Logue truck lines; that these truck lines usually made their c. o. d. remittances by cheque, mailed at Wichita, Kansas, and addressed to Amarillo, Texas; that he had asked these concerns to show their cancelled cheques as evidence of having paid these specific transactions and neither of the connecting truck lines had been able to produce such cheques; that he had not paid appellees any of the monies due for the c. o. d. items involved in this case.

There is no evidence as to whether the Logue or Vincent lines actually collected the sums due upon delivery of the merchandies to the consignees or that the merchandise was actually delivered. It is admitted that Westerfield is an interested witness.

To support the jury's findings, the appellees point out a portion of Westerfield's testimony in which he states that he has written the connecting truck lines "for any cancelled cheques they might have, and they can't produce any. They haven't—they just haven't paid them, because we have got other accounts, c. o. ds. outstanding that they haven't paid too." The appellees argue that this statement cast doubt upon the subject of the payment of the c. o. d. items by the connecting lines and shows that the question of whether such items had been paid by the connecting lines was in dispute, that the Westerfield Truck Line and the connecting carriers were not in agreement among themselves as to whether the c. o. d. monies had been paid.

This doubt, continues the appellees, is sufficient to place Westerfield's testimony within the rule established by our Supreme Court to the effect that the credibility of an interested witness and the weight to be given his testimony are questions for the jury to determine, notwithstanding such testimony is uncontradicted and such witness unimpeached. Smalley v. Octagon Oil Co. et al., Tex.Civ.App., 82 S.W.2d 1049, error dismissed. We do not agree with the appellees in this contention.

██ A careful reading of the record discloses that Westerfield denied several times in the course of his testimony that either the Vincent Truck Line or the Logue Truck Line had remitted to him any of the monies involved in this suit. He also stated that he had traced both the Vincent and Logue lines a good many times trying to secure payment from these truck lines for the appellees, and that the appellees had copies of his correspondence in this connection. If Westerfield's testimony concerning his asking the connecting lines for their cancelled cheques can be interpreted as meaning anything material to the issue of payment, in our opinion such a statement is but a substantiation of his repeated assertion that he had not received the monies on the eleven c. o. d. shipments. Even though he is an interested witness, the jury would not be justified in finding that he received the c. o. d. funds, when he positively testified to the contrary and there is no testimony from any source to substantiate the finding that he did receive them. Texas & P. Ry. Co. v. Brown, 142 Tex. 385, 181 S.W.2d 68; Texas & N.O.R. Co. v. Grace et al., 144 Tex. 71, 188 S.W.2d 378; also see Smalley v. Octagon Oil Co., supra, and the cases there cited. As stated by this court in Boyd v. Chicago, R. I. & P. Ry. Co., Tex.Civ.App., 149 S.W.2d 1053, 1056, "While a jury is permitted to disregard the evidence of interested witnesses it is not allowed after discarding such testimony to find a verdict contrary thereto without testimony from some source to warrant their finding." Westerfield's testimony is neither discredited nor impeached, and fails utterly and completely to support the jury's findings that he re-

ceived the c. o. d. charges from the connecting truck lines. The test of whether the evidence is sufficient to support the jury's verdict is to be found in the well established rule of law which directs that we must give credence only to that evidence favorable to the verdict and disregard all circumstances to the contrary. Applying this rule, we find no evidence of probative force to support the verdict of the jury. Alexander Marketing Co. v. Medford, Tex. Civ.App., 170 S.W.2d 809, and other authorities there cited.

Nor, in our opinion, are the appellees entitled to judgment under the rule advanced in Anthony et al. v. American Express Co. et al., 188 N.C. 407, 124 S.E. 753, 36 A.L.R. 460. In that case the North Carolina Supreme Court held that the consignor made out a prima facie case for the purchase price of the consignment when he proved a delivery of a c. o. d. shipment to a carrier for which the carrier had neither returned the merchandise nor remitted the amount to be collected. Under such circumstance the jury could infer that the shipment was delivered to the consignee, and the burden was upon the carrier to overcome such a prima facie case. Whether the merchandise had been delivered to the consignee was information which lay peculiarly within the knowledge of the defendant, and it was for this reason that the North Carolina court applied a rule which placed the burden of proof on the defendant carrier.

The appellees contend that under the rule announced in the Anthony case, supra, the burden of proof is upon the appellant to show that Westerfield failed to collect the monies due on the c. o. d. shipments. It is true that the merchandise was delivered to Westerfield by the appellees, and that Westerfield failed to return the goods or remit the amounts to be collected. It is to be noticed, however, that in the Anthony case the consignee was on the carrier's line, whereas in this case the consignees are on the lines of connecting carriers. The appellant, Commercial Standard Insurance Company, is a stranger to the contract existing between Westerfield Truck Line and the connecting carriers. Certainly there rests with this appellant no peculiar knowledge of any fact sufficient to give rise to a presumption or amount of prima facie proof. The Anthony case, properly applied, could only authorize the presumption that the connecting carriers delivered the merchandise and collected from the consignees the monies due the appellees. In our opinion the Anthony case does not warrant the presumption that the connecting carriers had not only collected the monies from the consignees but had remitted them to the Westerfield Truck Line. 10 Corpus Juris 279, note 39; 13 C.J.S., Carriers, § 186.

The appellant's motion for rehearing is granted. For the reasons given, the judgment of the trial court is reversed and the cause remanded. Because of our disposition of the case, it is unnecessary to discuss the appellant's remaining points of error.