Mrs. J. A. ALLISON et al., Appellants,

v.

Clydie M. SIMMONS, Appellee.

No. 3455.

Court of Civil Appeals of Texas.

Waco.

Oct. 2, 1957.

Rehearing Denied Oct. 31, 1957.

C. C. Renfro, Dallas, for appellants.

Fritz & Vinson, Dallas, for appellee.

McDONALD, Chief Justice.

This is an appeal from a judgment for $5822.40 rendered upon a jury verdict in favor of appellee (plaintiff in the Trial Court), Mrs. Clydie Simmons, against appellants (defendants in the Trial Court), Triangle Loan Service, W. D. Caldwell and Mrs. J. A. Allison (and W. L. Caldwell,

defendant in the Trial Court who did not appeal), the two Caldwells and Mrs. Allison being owners of Triangle Loan Service.

Plaintiff sued defendants, alleging a conspiracy, interlocking ownership, or joint operation in a usurious brokerage device and an unreasonable harassment program to collect usurious interest. Plaintiff prayed for double damages for usurious interest collected, actual damages for mental and physical illness and loss of pay caused by the excessive harassment, and for exemplary damages because the collection contacts were malicious.

The recovery was for usury and also for damages alleged to have been brought about by appellants' unreasonable, harsh collection efforts, which caused appellee to suffer mental and emotional pain and physical illness.

Originally plaintiff was joined by another borrower as co-plaintiff and included other loan agencies and their owners as co-defendants. On special exceptions of the appellants and other original co-defendants, the Trial Court ordered a severance of the other borrower and the other co-defendants from this cause.

Trial was to a jury, which, in answer to Special Issues, found:

1) On each of four dates, Triangle handled loans with plaintiff.

2) On each of four dates, Triangle failed to advise plaintiff it was a broker.

3) On each of four dates, Triangle guaranteed plaintiff's loans.

4) On each of four dates, Triangle advanced money to plaintiff without prior approval by the payee.

5) On each of four dates, Triangle handled loans under a business practice whereby the payee on the notes always accepted the loans of Triangle.

6) On each of four dates, Triangle was placing all its loans with only one agency.

7) On each of four dates, Triangle used forms which, prior to each loan transaction with plaintiff, already contained thereon the name of payee.

9) W. L. Caldwell had an ownership interest in United Credit Co., Inc.

10) Mrs. J. A. Allison had an ownership interest in United Credit Co., Inc.

13) Mrs. J. A. Allison had an ownership interest in Federal Mortgage Credit Co., Inc.

15) On each of four dates, Triangle handled loans to plaintiff with a purpose of obtaining compensation for the use of money.

16) Plaintiff made certain payments to Triangle, including $5.60 in each of the last two loans.

17) W. L. Caldwell had an ownership interest in Triangle.

18) W. L. Caldwell participated in a conspiracy with Mrs. J. A. Allison to conceal his ownership interest in Triangle.

19) W. L. Caldwell participated in a conspiracy with W. D. Caldwell to conceal his ownership interest in Triangle.

20) Mrs. J. A. Allison had an ownership interest in Triangle.

21) W. D. Caldwell had an ownership interest in Triangle.

22) W. L. Caldwell exercised certain control over Triangle.

23) Triangle made unreasonable collection contacts against plaintiff.

24) Triangle made wanton collection contacts against plaintiff.

25) Triangle made collection contacts against plaintiff with a purpose of causing plaintiff mental or emotional pain and suffering and loss of work.

26) Plaintiff did suffer mental or emotional pain and suffering and physical illness.

27) Triangle's collection contacts were a proximate cause of plaintiff's mental and emotional pain and suffering and physical illness.

28) The sum of money which would reasonably compensate plaintiff for such mental and emotional pain and suffering and physical illness and loss of compensation and employment resulting from Triangle's collection contacts is $800.

29) Mrs. J. A. Allison authorized or ratified said collection contacts.

30) W. D. Caldwell authorized or ratified said collection contacts.

31) W. L. Caldwell authorized or ratified said collection contacts.

32) Collection contacts of Triangle were actuated by malice.

33) W. L. Caldwell authorized or ratified malicious contacts.

34) W. L. Caldwell should pay $3,000 as exemplary damages.

35) W. D. Caldwell ratified malicious contacts.

36) W. D. Caldwell should pay $1,000 as exemplary damages.

37) Mrs. J. A. Allison ratified malicious contacts.

38) Mrs. J. A. Allison should pay $1,000 as exemplary damages.

39) W. L. Caldwell, after being served in this cause, authorized C. C. Renfro to take such action on his behalf as he saw fit.

40) Plaintiff had not been compensated in full by the $2,550 she had received in settlements from other loan offices.

The Trial Court entered judgment on the foregoing verdict for plaintiff for $22.-40 as double damages for usurious interest charged; $800 actual damages for harassment; $3,000 exemplary damages against Triangle Loan Service and W. L. Caldwell; $1,000 exemplary damages against Trian-gle Loan Service and W. D. Caldwell; and $1,000 exemplary damages against Triangle Loan Service and Mrs. J. A. Allison. All defendants except W. L. Caldwell have appealed.

Briefly, the record before us reflects that Triangle Loan Company handled loans for plaintiff; that Triangle did not advise plaintiff that it was a broker—not lending the money itself, but arranging loans with United Credit Company and other loan concerns; a fee for arranging the loans was charged; that W. L. Caldwell, W. D. Caldwell and Mrs. J. A. Allison all had an ownership interest in both concerns; that Triangle, with the knowledge and consent of the Caldwells and Mrs. Allison, made harsh and unreasonable collection contacts against plaintiff, which caused her physical and mental suffering. The charges made of plaintiff for use of the money were usurious.

Appeal is grounded upon some 25 points presenting some nine separate contentions. These contentions will be discussed in the same order as presented by appealing defendants.

■ The 1st contention complains of the action of the Trial Court in overruling defendants' objection to the testimony of Dr. Needham relating to his treatment of plaintiff for arthritis, and in permitting plaintiff leave to file a trial amendment. Plaintiff did not plead arthritis as one of her infirmities. Dr. Needham started treating plaintiff 4 March 1954 and has been treating her since; before him other doctors in the Samuell Clinic had been treating her. Dr. Needham testified that at her first visit she was suffering from chronic tension, shortness of breath, gastre intestinal burning, upper abdominal pains, numbness and tingling hands, extreme fatigue and exhaustion; later he gave her a complete physical, made lab studies, X-rays, blood counts, etc., and found her to show early arthritic changes in the hands. Dr. Needham further testified that a chronic anxiety state will aggravate rheumatoid arthritis.

Defendants objected to the doctor's testimony about arthritis on the ground that it was not specifically mentioned in the pleading, which objection was overruled by the court. Thereafter the court permitted plaintiff to file a trial amendment specifying rheumatoid arthritis as one of her illnesses.

Plaintiff had plead that she had "mental pain and anguish and suffering and resultant physical illness and nervous disorder". Dr. Needham testified that all of plaintiff's illnesses had a causal connection to chronic tension and anxiety and could have been caused by the harassment contacts. The Trial Court permitted trial amendment of pleadings under Rule 66 Texas Rules of Civil Procedure to include the allegation of arthritis. We fail to perceive error.

█ Defendants' 2nd contention is that the Trial Court erred in overruling defendants' motion for instructed verdict and for judgment non obstante veredicto, for the reason that the case was improperly submitted to the jury and that the jury's findings are insufficient to support the judgment.

We think that the case was fairly submitted, and that the evidence and jury findings are amply sufficient to support the judgment and that the Trial Court did not err in overruling defendants' motions for instructed verdict and for judgment non obstante veredicto.

██ Defendants' 3rd contention complains of the action of the Trial Court in ordering that plaintiff's cause of action be tried separately as to defendants from the trial of the cause of action against the other loan agencies which were original defendants, as well as other loan agencies dismissed from the suit. We overrule this contention because the Trial Court's action was taken in response to the request of these appellants themselves, and for the further reason that appellants did not object or except to the severance in the Trial Court. It is elementary that a litigant

cannot ask something of a court, and then complain that the court committed error in giving it to him. See: Northeast Texas Motor Lines v. Hodges, 138 Tex. 280, 158 S.W.2d 487; Whitehead v. Traders & General Ins. Co., Tex.Civ.App., 128 S.W.2d 429; Spence v. State Nat. Bank, Tex.Com. App., 5 S.W.2d 754 (and cases therein collated and cited.).

█ Under this same contention defendants further complain of the action of the Trial Court in not submitting a special issue to the jury requested by defendant concerning whether the $2,550 plaintiff settled with other loan agencies for had compensated her for her injuries. The issue requested by defendants is almost identical to the issue submitted by the Trial Court. The slight variation between these two issues is of no significance and we hold the Trial Court fairly submitted the issue.

█ The defendants' 4th contention is levelled at the ruling of the Trial Court in admitting into evidence plaintiff's Exhibits 40, 41, 43, 44, 45, 46, 47, 51 and 53. Exhibits 40, 41, 43, 44, 45, 46 and 47 are copies of letters passing between Elmo Lewandowski (manager of Triangle Loan) and W. L. Caldwell or his secretary. These letters instructed Elmo how to handle various phases of the business, including clandestine legislative campaigns, reporting of note balances, setting up security to protect the guaranty of notes by Triangle, and making daily reports to headquarters. Exhibit 47 is a reply by Elmo to W. L. Caldwell concerning a failure to forward payments by Triangle to United Credit Company. We think the evidence was admissible of the extent which W. L. Caldwell set the policy of Triangle and controlled both the "lender" and the broker. They are evidence of both control and ownership by the Caldwell family of Triangle Loan Service, and of the guaranty by Triangle of the notes forwarded to United and the other loan principles. They are indicative of a usurious brokerage device. See: Donoghue v. State, Tex.Civ.

App., 211 S.W.2d 623, W/E Ref. n. r. e.; State v. Abbott Loan Service, Tex.Civ. App., 195 S.W.2d 416, W/E Ref. n. r. e.; Ware v. Paxton, Tex.Civ.App., 266 S.W.2d 218, W/E Ref. n. r. e.; Ware v. Wright, Tex.Civ.App., 266 S.W.2d 188; Wright v. E-Z Finance Co., Tex.Civ.App., 267 S.W. 2d 602, W/E Ref. n. r. e.

■ Plaintiff plead a conspiracy to charge usurious interest. Conspiracies, being in defiance of law, are conceived in secrecy and executed in such a manner as to avoid detection and exposure, and proof of such unlawful enterprises must, in the very nature of things, be made by circumstances, and every circumstance which tends to cast light upon the transaction is legitimate and proper. See: American Rio Grande L. & I. Co. v. Barker, Tex.Civ. App., 268 S.W. 506; Vittitoe v. Junkin, Tex.Civ.App., 54 S.W.2d 166; Griffith v. Gadberry, Tex.Civ.App., 182 S.W.2d 739; Greever v. Persky, 140 Tex. 64, 165 S.W. 2d 709.

■ Exhibit 51 was a copy of the charter of United Credit Company, and Exhibit 53 was a notice to take depositions, which was included in the transcript. Exhibit 51 was admissible for the reasons above stated, and Exhibit 53 is admissible under Rules 186 and 188 T.R.C.P. Moreover, the admission is harmless.

Defendants' 5th contention complains of the Trial Court's definition and instruction as to "unreasonable collection efforts" and the failure of the Trial Court to submit defendants' definition. We think that the Trial Court's definition is correct, and that the Trial Court did not err in refusing to submit defendants' definition.

■ Defendants' 6th contention objects to the Trial Court's definition of "exemplary damages". The Trial Court defined "exemplary damages" as:

"Compensation allowed by law in addition to actual damages by way of punishment, and as an example for the good of the public, and may also include compensation for inconvenience, reasonable attorney's fees, and other losses too remote to be considered under actual damages."

We think the foregoing definition is not error. See: Wright Titus, Inc. v. Swafford, Tex.Civ.App., 133 S.W.2d 287.

■ Defendants' 7th contention complains of the Trial Court's refusal to submit defendants' special instruction defining mental and emotional pain and suffering. Defendants wanted the court to instruct the jury that "Mere disappointment, anger, worry, mental disturbance or injury of feelings does not constitute mental and emotional pain and suffering." We think such was not a correct definition and that mental disturbance and injury of feelings do constitute mental or emotional pain and suffering. Since defendants' instruction was not substantially correct, the Trial Court committed no error in not submitting same. See Rule 279 T.R.C.P.; Yellow Cab & Baggage Co. v. Green, 154 Tex. 330, 277 S.W.2d 92.

Defendants' 8th contention is that the Trial Court erred in overruling plaintiff's objections to special issues as to the interest of Mrs. J. A. Allison in United Credit Co. and Federal Mortgage Credit Co., the usurious purpose of the loan transactions and the conspiracy (Issues 10, 13, 15, 16, 18 and 19). We think that the evidence raises the issues and that the answers to same are amply supported.

Finally, defendants object to the submission of Issues 23 through 30, and 32 through 38. We likewise hold these issues to be raised in the evidence and the answers thereto amply supported.

We have given earnest consideration to all of defendants' points and the contentions made thereunder, and hold that none present reversible error.

The judgment of the Trial Court is accordingly affirmed.