**NORTEX OIL & GAS CORPORATION,
Appellant,**

**v.**

**SCHLUMBERGER WELL SURVEYING
CORPORATION, Appellee.**

**No. 4620.**

Court of Civil Appeals of Texas.

Waco.

June 8, 1967.

Rehearing Denied July 13, 1967.

Lyne, Klein & French, Fritz Lyne, Erich F. Klein, Jr., Dallas, Ralph Balasco, Houston, for appellant.

Baker, Botts, Shepherd & Coates, John F. Heard, J. C. Hutcheson, III, Houston, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal from a judgment that plaintiff take nothing, rendered by the trial

court, after sustaining defendant's motion to withdraw case from jury and render judgment plaintiff take nothing.

This case arises out of the "slant well" situation in the East Texas oil field. Plaintiff Nortex sued defendant Schlumberger, alleging plaintiff purchased a number of leases in the East Texas oil field from Ebro Oil Company and Burke Royalty Company for some $5,000,000; that plaintiff had no knowledge of the actual conditions, but relied on reports of reputable petroleum engineers and well status reports and other fraudulent information furnished by the sellers; that some 17 wells were illegal slant wells and actually worth only some $1,700,000; that defendant Schlumberger ran electric logs, perforated and assisted in completing the illegally deviated wells. Plaintiff further alleged defendant conspired with the previous owners to illegally drill, complete and conceal the slant wells; that plaintiff, without knowledge, purchased the wells, and that as a direct result of such unlawful conspiracy, plaintiff was damaged in excess of $3,000,000.

The proof showed that defendant performed services on 4 of the wells purchased by plaintiff at the time the wells were being drilled and illegally deviated, and that such wells were far deeper than a normal well in the East Texas field, and that such facts were well known to defendant. The 4 wells were drilled between December, 1958 and June, 1960. Defendant logged and perforated them at the time they were drilled; they were illegally deviated and bottomed on adjacent leases not owned by the sellers. Plaintiff purchased the leases in February and July, 1961; in 1962 it was discovered the 4 wells, together with 13 others located on the leases, were illegally deviated. A vertical well in the East Texas field produces at 3500 to 3700 feet. The slant wells purchased by plaintiff had coreholes up to 5200 feet. Defendant knew the depth of the wells when it logged and perforated them. Defendant knew that any well in the field bottomed at more than 4000 feet was a deviated well.

Prior to discovery of the slant hole situation the leases, upon which the 4 slant wells which were completed with defendant's assistance, were capable of producing over 18,000 barrels of oil per month, and after discovery of such situation were only capable of producing 4,000 barrels per month.

In 1960 defendant for the East Texas field only, discontinued including the depth of wells on which service was performed upon its service orders, and instituted a procedure whereby the operator placed the depth on a separate slip of paper which was destroyed after charges were computed for the servicing. After discovery of the slant well situation, defendant's division manager stated that Schlumberger as a service company was not the policeman of the oil patch, and that it was not their job to see that their customers had permits for the drilling of slant wells; defendant destroyed all of its logs over 2 years old; and defendant's attorneys advised defendant's employees in connection with the investigation of the slant well situation "not to remember any more than we had to" and "a poor memory might embarrass you but it wouldn't get you into any trouble."

The record further reflects that Schlumberger assisted in completing a great number of illegally deviated wells in the East Texas field; that Hallmark, a field engineer for defendant, averaged logging a deviated well in the East Texas field once a week for 1½ years.

At the conclusion of plaintiff's evidence, the trial court granted defendant's motion to withdraw the case from jury and render judgment that plaintiff take nothing.

Plaintiff appeals on 6 points, contending:

1) The trial court erred in withdrawing the case from the jury and rendering judgment that plaintiff take nothing because the evidence raises a fact issue as to whether defendant as a member of a conspiracy is liable to plaintiff.

2) The trial court erred in excluding certain evidence.

We revert to contention 2. The trial court excluded evidence that defendant had logged or perforated a number of deviated wells other than the wells here involved; excluded evidence of conversations between defendant's employees regarding the performance of services on deviated wells; excluded evidence of suggestions by defendant's attorneys as to how defendant's employees should handle themselves if contacted about slant hole situations; and excluded evidence of misrepresentations made by the sellers of the properties to plaintiff.

Plaintiff's cause of action is based upon allegation that defendant was a participant in a civil conspiracy which resulted in injury to plaintiff.

■ Conspiracies being in defiance of the law are conceived in secrecy, and executed in such a manner as to avoid detection and exposure, and proof of such unlawful enterprises must, in the very nature of things, be made by circumstances, and every circumstance which tends to cast light upon the transaction is legitimate and proper. Allison v. Simmons, CCA (nre) 306 S.W.2d 206; Jernigan v. Wainer, Sup. Ct., 12 Tex. 189; Vittitoe v. Junkin, C.C.A., W/E Dism'd, 54 S.W.2d 166.

In Vittitoe, supra, the court said:

"Those engaged in forming conspiracies * * * do not proclaim their purpose on the hilltops or the highways, but proceed in dark and devious ways to accomplish their unlawful designs. It is, therefore, always difficult to prove the existence of a conspiracy, and great latitude must be indulged to permit proof of every circumstance, however trivial when standing alone, tending to show a conspiracy."

Plaintiff's 1st contention is that the trial court erred in withdrawing the case from the jury and in rendering judgment that plaintiff take nothing.

■ An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose. Great National Life Ins. Co. v. Chapa, Sup.Ct., 377 S.W.2d 632. And when a conspiracy is proven, each of the parties thereto is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination. State v. Standard Oil Co., 130 Tex. 313, 107 S.W.2d 550, 559; Berry v. Golden Light Coffee Co., 160 Tex. 128, 327 S.W.2d 436.

Defendant performed services on 4 of the slant wells purchased by plaintiff, and such services were performed at the time the wells were being illegally deviated. Defendant at the time such services (logging and perforation) were performed on such wells, knew that it was unlawful to bottom a well off a lease on which it was surfaced, and that the Railroad Commission's regulations prohibited the deviation of a well more than 3 degrees without a permit.

But defendant contends that even if there was a conspiracy of which it was a member, still plaintiff is in no position to complain, since plaintiff did not sustain injury as a natural and necessary consequence of the conspiracy, citing Great National Life Ins. Co. v. Chapa, supra, and Sitton v. American Title Co., Tex.Civ.App., 396 S.W.2d 899.

Defendant asserts the conspiracy here, (if any) was to drill illegally deviated wells. The drilling was performed some 12 to 26 months prior to the time plaintiff purchased the leases. Defendant asserts that plaintiff's injury was not one which could be reasonably anticipated as the probable result of the wrongful act; and that the act of the sellers in defrauding plaintiff was not in furtherance of the conspiracy.

It was unlawful to drill an illegal slant well bottomed upon another lease. Of course it could be reasonably anticipated that the owner of the lease from whom oil was stolen by reason of the slant well, would be injured, and that the act of stealing such oil was in furtherance of the conspiracy. And we think it could likewise be

reasonably anticipated that the lease could be sold, and that an innocent purchaser of the lease would be injured as a result; and that the act of selling the lease upon fraudulent representations was in furtherance of the conspiracy.

We think the excluded evidence should have been admitted, and that the record makes for a fact issue as to whether defendant, as a member of a conspiracy, is liable to plaintiff.

Reversed and remanded.