John P. ROGGE et al., Appellants,

v.

GULF OIL CORPORATION et al., Appellees.

No. 3907.

Court of Civil Appeals of Texas.

Waco.

Oct. 26, 1961.

Rehearing Denied Dec. 7, 1961.

Will Wilson, Atty. Gen., J. Milton Richardson, Asst. Atty. Gen., James M. Neff, Orange, for appellant.

Fred A. Lange, Houston, Hustmyre & Harris, Orange, for appellee.

Martin Dies, Sr., Lufkin, for Margaret Stephenson and Estate of K. W. Stephenson.

WILSON, Justice.

This vacancy suit is basically a boundary controversy brought as a trespass to try title action by Rogge, lessee of the State. The State as lessor intervened. They will be referred to herein as plaintiffs. Their suit is against Gulf and numerous others, who will be collectively referred to as defendants, to recover title to and possession of Rogge's interest under an oil and gas lease covering lands in Orange County. Judgment was rendered on a jury verdict for plaintiffs as to 28 acres involved, and against them as to other lands sued for in so far as parties before us are affected. Gulf and other non-defaulting and non-disclaiming defendants appeal from the judgment as to the 28 acres; plaintiffs appeal from the judgment denying them recovery as to the balance of the land in controversy.

We will first dispose of the appeal by Gulf and other defendants. They present points attacking the jury findings on which the judgment relating to the 28 acres was rendered, complaining of submission of issues relating thereto, and otherwise challenging that portion of the judgment.

■ These defendants filed and presented to the trial court a motion for judgment asserting unequivocally that upon the verdict they were entitled to judgment for all land sued for except the 28 acres, which "should be awarded to John P. Rogge, plaintiff, and the State of Texas, intervenor;" and praying that judgment be rendered awarding the 28 acres to the latter. Plaintiffs likewise moved for judgment as to the 28 acres. The judgment recited the jury findings, the presentation and consideration of the motions, and awarded the 28 acres to plaintiffs. Thereafter, making no motion for judgment notwithstanding the verdict or to disregard findings, defendants presented a motion for new trial which they refer to in their brief as a motion that these answers "be set aside as not being supported by the evidence", and praying that the judgment as to the 28 acres be also set aside. The motion was overruled.

Having induced the court to render judgment on the verdict by affirmatively praying that the 28 acres be awarded to plaintiffs, defendants may not now complain of the action which they invited, requested and urged. Smith v. Chipley, 118 Tex. 415, 16 S.W.2d 269, 276; Texas Portland Cement & Lime Co. v. Lee, 98 Tex. 236, 82 S.W. 1025; American Surety Co. v. Whitehead, Tex.Com.App., 45 S.W.2d 958, 961; Whitehead v. Reiger, Tex.Com.App., 6 S.W.2d 745, 747; Fidelity & Deposit Co. of Maryland v. Risien, Tex.Civ.App., 284 S.W. 977, 980; Dallas Ry. & Terminal Co. v. Straughan, Tex.Civ.App., 254 S.W.2d 882, 885; Barton v. Wood, Tex.Civ.App., 162 S.W.2d 147, 148, writ ref. w. m.; Jones Fine Bread Co. v. Cook, Tex.Civ. App., 154 S.W.2d 889, 890; Braden v. State, Tex.Civ.App., 108 SW.2d 314, 317, syl. 3; National Bank v. Kilgore, 17 Tex. Civ.App. 462, 43 S.W. 565, 566; 4 Tex.Jur. 2d Secs. 765, 773.

■ The facts relating to plaintiffs' appeal are extremely complex. They may be more clearly understood by a reading of Caswell v. Faulk, Tex.Civ.App., 97 S.W.2d 341, writ ref., and study of the plat therein, relating to the Beaumont and surrounding surveys; and State v. Gulf Oil Corp., Tex. Civ.App., 264 S.W.2d 743, writ ref. n. r. e., relating to the Allen survey.

Jury findings, which plaintiffs say are without support in the evidence, were that (1) Pinkston did make a survey of Beaumont on the ground; (4) that he did not locate the upper southeast corner of the Beaumont at a point S 9 W 1320 varas from

its most northerly corner; (5) that he did not complete his survey by following his field note courses and distances from the last mentioned point, and (9) that he placed the upper southeast corner of the Beaumont at the northeast corner of the James Smith (Nancy Block) survey. Plaintiffs say that the actual boundaries of the Beaumont Survey presented a question of law only under which course and distance calls in Pinkston's field notes should control, and calls for adjoinder with the Block (James Smith) and Big 3B surveys rejected.

Plaintiffs' entire appeal, we think, is determined by the doctrine of stare decisis. All material contentions here presented by them were concluded by the decision in Caswell v. Faulk, Tex.Civ.App.1936, 97 S.W.2d 341, writ refused. Plaintiffs there were predecessors in title of defendant—appellees here. The present record contains the judgment in that case, field notes in which fixed the boundaries and location of the Jacob Beaumont survey. In that case plaintiffs were the owners of the Beaumont, and defendants were owners of the Big 3B. Plaintiffs sought to recover title to the Beaumont survey, and the location and boundaries of that survey are what that judgment determined. Although the format in which the issues on appeal were cast (under agreement that boundaries of plaintiffs' Beaumont and defendants' Big 3B surveys coincided) permitted disposition on the basis of the Big 3B north boundary, the decision necessarily determined the true location on the ground of the Beaumont south line. That, indeed, was the real issue involved—made so by the petition of plaintiffs there, who were the owners of the Beaumont survey. Fixation of the Big 3B north boundary was merely the process and method by which the issue of the Beaumont south line was determined in Caswell v. Faulk. The field notes fixing the boundaries of the Beaumont surveys in that judgment can only be comprehensively related to plaintiffs' claims and the trial court's judgment here by platting the respective field notes in the two judgments, which we have done on the appended exhibits.

From them it is clear that Caswell v. Faulk determined the boundaries of the Beaumont survey; that the northwest corner of the Big 3B coincides with the southwest corner of Beaumont; that the northeast corner of Big 3B is the same as the lower southeast corner of Beaumont; that each of the northernmost corners of the Block survey are coincident with the corresponding corners of Beaumont, and they adjoin; that the southernmost east line of Beaumont coincides with the west line of Block; the west line of Beaumont and its northwest corner are in the east line of Montez; that the upper south line of Beaumont is the same as the north line of Block; and that the course and location of the Beaumont north line are in part the same as the south line of the Allen, and its northernmost corners are the southernmost of Stephenson.

The shaded area on our plat 2 pictures the appealing plaintiffs' claim according to the field notes in their pleading. The judgment of the trial court tracked those field notes, including plaintiffs' calls which referred to the northern boundaries of the shaded area as being the southern boundaries of the Beaumont survey. When these references are disregarded it is clear that the present judgment gives complete effect, with insignificant variations, to the boundaries of the Beaumont survey as settled in Caswell v. Faulk, and avoids inconsistencies or conflicts with the boundaries of all surrounding surveys. Otherwise it is impossible to reconcile them. It is also clear that the claimed vacancy (except for the 28 acre tract which plaintiffs recovered) is entirely within the boundaries of Beaumont as fixed by Caswell v. Faulk.

Over-simplified, plaintiffs' contention is that the upper boundaries of their claim are the true lower boundaries of Beaumont. To support this claim they insist that the easternmost boundary of Beaumont, as settled in Caswell v. Faulk (with its southern terminus in the northeast corner of the

Block survey), requires a long call for distance, exceeding by nearly one-half mile the length of such east line in surveyor Pinkston's field notes 70 years earlier.

Plaintiffs say the claimed land involved in their appeal does not lie in the Beaumont survey. Caswell v. Faulk says it does. The total issue in plaintiffs' appeal is thus the location and boundaries of the Jacob Beaumont Survey. That issue was completely adjudicated in Caswell v. Faulk, judgment in which fixed, and we think stabilized, such boundaries, delineating them by complete description. In seeking to establish their claim, plaintiffs' surveyor honored and recognized the judgment in Caswell v. Faulk in some respects, but ignored and rejected it in others. In order for plaintiffs to recover the land they claim is vacant, the Caswell v. Faulk boundaries must be repudiated. The boundaries of the 28 acre tract as fixed by the present judgment are not in controversy so far as plaintiffs are concerned, since they moved for and obtained judgment fixing such boundaries, and seek here to have that portion of the judgment affirmed. This portion of the judgment is not inconsistent with that in Caswell v. Faulk.

■ The Supreme Court of Texas, unqualifiedly refused application for writ of error in Caswell v. Faulk. "When the Supreme Court once determines the true construction of a * * * written instrument that construction is binding in all subsequent suits involving the same subject matter, even though the parties in subsequent suits may not be the same as in the original suit", under the doctrine of stare decisis. Mitchell v. Mitchell, 157 Tex. 346, 303 S.W.2d 352, 354. The application of the doctrine in the present suit is settled in Patterson v. Peel, Tex.Civ. App., 149 S.W.2d 284, 285, writ refused, in which the location of a survey had been established by a prior judgment which fixed common corners and called for adjoinders with other surveys. Jury findings consistent with the prior judgment were attacked. Holding the jury findings were

essential elements in fixing boundaries and corners of adjoining surveys in the prior suit, the court said of the previous determination that those findings "as a matter of law were binding upon all parties to this litigation, on the principles of stare decisis." These principles operate as to the State. W. T. Carter & Bro. v. State, Tex.Civ.App., 139 S.W.2d 661, 663, writ refused. In the latter case it was held that where proper location of boundaries of a survey were necessary to adjudication of one suit, a final adjudication fixing such boundaries "would * * * be conclusive against all parties in a subsequent suit involving the same controversy. And this is true even in a suit by the State relating to vacancies, though the State be not a party to the suit in which such boundaries were judicially established," and though the parties and property involved are not identical, under stare decisis. The rule we consider applicable here is summarized in Case-Pomeroy Oil Corp. v. Pure Oil Co., Tex.Civ.App., 279 S.W.2d 886, 888, writ refused.

■■ The doctrine of stare decisis relates to questions of law and application of legal principles, and not, ordinarily, to fact issues. Horne v. Moody, Tex.Civ.App., 146 S.W.2d 505, 509, writ dis. C. J.; Duval County Ranch Co. v. Foster, Tex.Civ.App., 318 S.W.2d 25, 28, writ ref. n. r. e. When the Supreme Court unqualifiedly refuses a writ of error in a case where application of legal principles is necessary in the construction of a survey and the location of its boundaries, the decision is "one of law", and courts in subsequent cases are "duty bound to follow those decisions in all cases in which the question of the proper method of constructing" such survey is involved. Federal Royalty Co. v. State, 128 Tex. 324, 98 S.W.2d 993, 996.

Caswell v. Faulk turned on application of legal principles in determining the legal method of locating the Beaumont survey on the ground. Its decision required application of legal principles in fixing the northeast corner of the Allen as being the southwest corner of the Stephenson and in fix-

ing the southern boundaries of Beaumont, agreed to be the northern boundaries of Big 3B. The court there stated that application of those principles to its construction of the survey would result in giving every other affected survey more acreage than its patent called for, and that "the Beaumont survey, owned by the plaintiffs, will have considerably more acreage than its patent calls for," and that "the Beaumont survey, a junior survey which calls for the lines of surrounding surveys, will take whatever land remains after the other surveys are located, whether that be more or less than called for in its patent." Caswell v. Faulk, in our opinion, is determinative of plaintiffs' contentions as appellants, and on the foregoing basis we think the judgment should be affirmed.

Alternatively, if it should be held that it is necessary for us to determine whether the jury findings are supported by the evidence, in order to expedite conclusion of this litigation we have carefully examined the evidence, and would hold that each of the jury findings is adequately supported thereby; and we would overrule all of appellants' points.

Affirmed.