**STRICKLAND TRANSPORTATION COM-
PANY, Inc., Appellant,**

v.

**NAVAJO FREIGHT LINES, INC., Appellee.**

No. 16414.

Court of Civil Appeals of Texas.

Dallas.

Dec. 11, 1964.

Rehearing Denied Feb. 5, 1965.

Muse, Currie & Kohen, Ralph W. Currie and R. Douglas Coffin, Dallas, for appellant.

Thompson, Knight, Wright & Simmons, Frank Finn, Jr., and George C. Chapman, Dallas, for appellee.

DIXON, Chief Justice.

On October 1, 1959 appellant Strickland Transportation Company, Inc., hereinafter called Strickland, sued appellee Navajo Freight Lines, Inc., hereinafter called Navajo, for the sum of $7,912 for rentals alleged to be due on that date on Strickland's trailer No. 813. Appellant alleged that an oral trailer interchange master contract had been entered into in 1955. Pursuant to said master contract trailer No. 813 had been turned over to Navajo in 1956, loaded with freight destined for delivery at a destination on the line of another motor freight carrier; and that rentals at the rate of $8.00 per day had continued to accrue.

On May 8, 1962 Navajo filed a cross-action for $14,946, which it claimed was due from Strickland following an adjustment of rental accounts between the two carriers involving trailer No. 813 as well as other trailers interchanged by the two carriers. Among other defenses Strickland pled that the cross-action was barred by limitations.

On October 14, 1963 Strickland filed its amended petition in which it alleged that the amount of daily rentals due in connection with No. 813 had reached a total of $19,016. Navajo filed a plea of limitations as to a substantial portion of Strickland's account.

In a trial before a jury an instructed verdict was granted in favor of Navajo for $4,712.

It is a practice among common carriers of freight to offer to the public a service where, for a single charge, shipments originating at a point on the line of one carrier will be transported and delivered to a destination on the line of another carrier. For convenience the cargo of freight is not ordinarily reloaded onto another trailer at an interchange point, but continues on its journey in the same trailer though the trailer is thereafter operated by the other carrier. On occasion a trailer loaded with cargo will pass into the possession of several different carriers before reaching its destination.

In their 1955 master contract Strickland and Navajo had agreed that on all interchanges of trailers between them the carrier receiving a trailer from the other would

pay the lending carrier a rental of $8.00 per day until the return of the leased trailer, or the delivery of another trailer acceptable to the lender in lieu of the original trailer. Both truck lines are freight carriers on a large scale. It was their practice to balance and settle their interchange accounts from time to time on a money basis.

This particular controversy involves three truck trailers: No. 813 owned by Strickland, No. 1A32 owned by Merchants' Motor Freight, Inc. of St. Louis, Missouri and No. 57 owned by Navajo.

On February 28, 1956 Strickland turned over to Navajo at Amarillo, Texas Strickland's trailer No. 813 loaded with explosives. Navajo thereafter turned No. 813 over to Garrett Freight Lines at Denver, Colorado, because the point of destination was located on Garrett's line. Garrett was obligated to pay Navajo $8.00 per day rental while No. 813 was in Garrett's possession. Garrett was supposed to return the trailer to Navajo so Navajo could return it to Strickland, thus terminating Navajo's obligation to pay $8.00 per day rental to Strickland. However, Garrett did not return No. 813 to Navajo. Instead on March 7, 1956 Garrett through error turned No. 813 over to Merchants' Freight Lines of St. Louis. Thereafter No. 813 became temporarily lost. Neither Garrett, nor Navajo, nor Merchants was able to trace No. 813. Meantime the daily rentals owed by Navajo to Strickland and by Garrett to Navajo continued to accumulate.

The transfer of February 28, 1956 of No. 813 from Strickland to Navajo was an interchange of trailer No. 813 from Strickland to Navajo, but it did not involve an exchange of trailers. In other words, Strickland did not receive a trailer in return for No. 813.

There is testimony that Garrett, desiring to terminate its obligation to pay rental on No. 813 to Navajo, communicated with Navajo at Denver, stating that Merchants would let Garrett have Merchants' trailer No. 1A32 in lieu of No. 813. Garrett would then give No. 1A32 to Navajo and Navajo would give No. 1A32 to Strickland to close out the interchange on February 28, 1956 of No. 813 from Strickland to Navajo. There is no evidence that Strickland was a party to this agreement.

On April 17, 1956 Navajo tendered trailer No. 1A32 to Strickland in an effort to terminate its rental obligation on No. 813 which had been in effect since February 28, 1956. Strickland at first refused to accept No. 1A32 in lieu of No. 813 because No. 1A32 was not a trailer to which Strickland had title or could obtain title. But, according to Strickland, possession of No. 1A32 was finally accepted by Strickland, solely on Navajo's representation that upon tender of No. 1A32 to Merchants, the latter carrier would either return No. 813, or some other acceptable trailer to Strickland.

*The date of April 18, 1956 is important in this case because Navajo in the alternative claims that on that date Strickland accepted No. 1A32 in lieu of its trailer No. 813, thereby terminating Navajo's obligation to pay $8.00 per day rental on No. 813.* This is denied by Strickland, who contends that possession of No. 1A32 was accepted strictly on condition that Merchants would exchange Strickland's No. 813 or some other acceptable Strickland trailer for No. 1A32.

Merchants, as it turned out, refused to exchange a Strickland trailer for No. 1A32. Strickland then tendered 1A32 back to Navajo since its acceptance of No. 1A32, according to Strickland, was based on a condition which was not fulfilled as above indicated. Navajo refused to accept the return of No. 1A32 from Strickland despite several tenders of the trailer by Strickland to Navajo. This situation continued for about eleven months during which time Strickland used No. 1A32 in the transportation of merchandise on several occasions.

On March 26, 1957 No. 1A32, loaded with a cargo whose destination was California, was finally returned by Strickland to Navajo in an interchange transaction. However, Navajo insists that its acceptance of the return of No. 1A32 had nothing to do with the controversy between the two carriers in regard to No. 813. Navajo contends that Strickland had previously on April 18, 1956 accepted possession of No. 1A32 in lieu of No. 813. The March 26, 1957 transfer of No. 1A32 back to Navajo was a new, independent interchange transaction, according to Navajo.

On April 9, 1957 No. 1A32 returned from its California trip and it was tendered by Navajo to Strickland from whom it had been received in the interchange of March 26, 1957. Strickland refused to accept return of No. 1A32, claiming that it had been turned back to Navajo pursuant to Strickland's refusal to accept it in place of No. 813. *This date, April 9, 1957, is important because Navajo claims in a second alternative that its duty to pay rentals on No. 813 terminated with Strickland's refusal to accept return of No. 1A32 in lieu of No. 813. It is admitted that Navajo declined to pay rentals on No. 813 after April 9, 1957.* It was stipulated by the parties that the value of No. 813 on that date was $4,000.

Thereafter trailer No. 1A32 sat idle in a parking lot in Amarillo, Texas until January 1, 1958 when it was finally picked up by Merchants, its owner. Merchants did not take back its trailer No. 1A32 in an interchange transaction. It simply picked up its own trailer because the trailer sat idle and both Strickland and Navajo disclaimed any responsibility or liability with reference to it.

Navajo's Denver office instructed its Amarillo office to "close off" its interchange transaction with Strickland on No. 813 as of April 9, 1957, the date Navajo had tendered trailer No. 1A32 to Strickland on its return from the California trip. In connection with these instructions Navajo's Denver office admitted that Navajo owed Strickland a

trailer, but stated it would not give Strickland a trailer until Navajo traded No. 1A32 and that meantime Navajo would not pay any more rental on No. 813.

But meantime another fact had come to light which added further to the confusion. It was discovered that on March 21, 1956 Merchants had surrendered possession of No. 813 to Strickland. *This date is also important for Navajo claims that by Strickland's acceptance of No. 813 from Merchants Navajo's obligation to pay rental on No. 813 was terminated as of March 21, 1956.*

Navajo's claim in this regard is denied by Strickland. The latter points out that it received No. 813 from Merchants on March 21, 1956 under load in an interchange transaction between Merchants and Strickland which involved an exchange of trailers. In other words, Strickland had to give Merchants a trailer in exchange for No. 813 on March 21, 1956. Thus Strickland was still deprived of the use of a trailer since it had given possession of No. 813 to Navajo on February 28, 1956 without receiving a trailer in exchange.

Further, Strickland points out that the exchange of trailers on March 21, 1956 whereby Strickland regained possession of No. 813 was part of a separate and independent interchange agreement and an exchange of trailers between Merchants and Strickland which had no connection whatever with the agreement and interchange of February 28, 1956 between Strickland and Navajo in which Strickland was deprived of the use of trailer No. 813 and Navajo agreed to pay $8.00 per day rental until No. 813, *or another trailer acceptable to Strickland,* was given to Strickland in place of No. 813.

In the cross-action filed by Navajo on May 8, 1962 Navajo sought judgment against Strickland on the ground that on various occasions the two carriers had undertaken adjustments and settlements of their interchange accounts against each

other and that Strickland had wrongfully withheld large sums of money on the pretext that the sums of money so withheld represented rentals which had accrued in connection with trailer No. 813.

Navajo also alleged that Strickland owed Navajo $4,848 as accrued rentals on Navajo's trailer No. 57 covering a period from September 18, 1958 through May 17, 1960, which trailer had gone into Strickland's possession in an interchange agreement. The total amount sued for by Navajo was $14,946.

## OPINION

■ The substance of appellant's first three points on appeal is that the trial court should have rendered judgment for appellant for the full amount of rentals due up to the date of trial, October 14, 1963, instead of merely allowing appellant credit for $4,000, the value of No. 813 on April 9, 1957, on the theory of conversion of the trailer by Navajo on that date. The basis of appellant's contention is that there was neither pleading nor proof of conversion.

In its brief appellee joins appellant in urging that it was error for the court to award appellant damages for conversion of appellant's trailer. Therefore, we sustain those parts of appellant's first three points which attack the award of damages for alleged conversion.

However, we believe the record presents issues of fact, so we overrule appellant's points insofar as they allege that the trial court should have instructed a verdict in favor of appellant.

In its fourth, sixth and seventh points appellant asserts that the court erred in crediting appellee with the sum of $3,984 against the $4,000 awarded to appellant. Appellant urges three defenses against the court's award of $3,984: (1) said sum had already been credited and applied to unpaid rentals due by appellee on No. 813; (2) the claim of appellee is barred by limita-

tion; and (3) the award is not in conformity with the pleadings or evidence.

The record discloses that on August 19, 1957 and on August 19, 1958 in alleged adjustments of accounts Strickland, before paying a balance due to Navajo, deducted sums of $656 and $3,328 respectively, said sums alleged to be rentals due Strickland by Navajo in connection with trailer No. 813. In a letter to Strickland dated August 29, 1958 Navajo challenged these deductions. The trial court disallowed the deductions and awarded Navajo judgment for their total, $3,984, on Navajo's cross-action.

In an alleged adjustment of accounts some time after October 1, 1959 Strickland credited Navajo with the sum of $4,728 which Strickland claimed Navajo owed as rentals at the rate of $8.00 per day in connection with No. 813 for 591 days on and after August 21, 1958. The trial court disallowed this deduction also and awarded Navajo judgment on its cross-action for the $4,728.

Is Navajo's cross-action filed May 8, 1962 for $3,984 barred by limitation, as appellant asserts? In its brief Navajo, in denying that its claim is barred, asserts these defenses: (1) the 1955 master contract governing the interchange of February 28, 1956 was not oral, but was in writing; (2) during all the period in controversy the parties were negotiating as to the correct amounts involved in their accounts with each other, therefore appellant is estopped to claim limitations; and (3) each interchange of trailers is evidenced in writing by a so-called written interchange receipt which is contractual in nature.

■ J. E. Titsworth, Strickland's Vice-President, testified that the master agreement entered into in 1955 was oral. However, William F. Gibson, Strickland's Secretary and Treasurer, testified that he believed there was a written master contract, though he had not seen it; and that the "various transactions thereafter would

have been pursuant to that general agreement." Titsworth was the only person present at the meeting in 1955 whose testimony appears in the record. His testimony is sufficient to support a finding that the agreement was oral. But Titsworth, being an officer of the corporation, was an interested witness. Warlick Press, Inc. v. Lantex Construction Co., Tex.Civ.App., 375 S.W.2d 349, 351; Davis v. Texas Standard Life Ins. Co., Tex.Civ.App., 115 S.W.2d 1132. Therefore his testimony presents a fact issue, even if it were to be considered uncontradicted, as Strickland contends.

We cannot agree with appellee that because of negotiations in progress appellant is estopped to claim limitations. Estoppel is an affirmative defense. It must be specifically pleaded. Rule 94, Texas Rules of Civil Procedure. Appellee did not plead estoppel. So far as the record shows appellee raises the question for the first time on appeal.

Are the written receipts exchanged and signed by both carriers at each interchange of trailers sufficient to satisfy the four-year statute of limitation, Art. 5527, Vernon's Ann.Civ.St.? These receipts contain some contractual provisions. However, neither appellant nor appellee relies on them altogether. For example, some of the receipts call for rentals at the rate of $8.00 per day for the first fourteen days and $10.00 per day thereafter. Appellee says this provision in receipts does not apply, for the rental agreed upon in the master contract provided only for rentals at the rate of $8.00 per day.

Some of the receipts also provide that if the particular interchange of a trailer is not subject to a written interchange contract between the carriers, the transaction is subject to the terms and conditions of the A.T.A. Regional Common Carrier Conference Interchange Contract. Appellant says such provision is not applicable to the interchanges in controversy in this case. Appellee is not in position to stand on the A.T.A. Regional Contract for the provision in the receipts is itself conditioned on the nonexistence of a written master contract between the carriers. Appellee, as before indicated, says there was such a written contract, but claims that it has been lost.

In any event, even if the pleadings were amended to encompass the question, oral testimony would be necessary to support the contentions of the parties. If any of the provisions of the alleged receipts must be supplied by parol the contract is an oral contract. Barbier v. Barry, Tex. Civ.App., 345 S.W.2d 557, 564; Purdin v. Jenkins, Tex.Civ.App., 337 S.W.2d 418; Luglan v. Tomlin, Tex.Civ.App., 287 S.W. 2d 188; Cowart v. Russell (Comm.App., op. adopted), 135 Tex. 562, 144 S.W.2d 249, 250; Cannaday v. Martin, Tex.Civ.App., 98 S.W.2d 1009, 1013.

In the present state of the record Navajo's claim to be reimbursed for the alleged wrongful deduction of $656 in 1957 is barred by limitations even if the four-year statute is applicable, as appellee claims. As to the alleged wrongful deduction of $3,328 in August. 1958 the entire amount is barred by limitation if the two-year statute is applicable. Even if the four-year statute is applicable part of the $3,328 would be barred. Which of the two statutes is applicable would depend on whether the master contract is written or oral—a fact question. Since appellee's claim of limitation must await the determination of a fact issue we overrule appellant's fourth and sixth points. Appellant's seventh point is sustained.

Appellant's fifth point in substance is that the court erred in awarding appellee a recovery of $4,728 since said sum, as shown by the undisputed evidence, had been properly credited by appellant to unpaid trailer rentals. We are unable to say whether as a matter of law the sum in question had been *properly* credited. As pointed out earlier in this opinion appellee alleges that these dates are important: March 21, 1956

(when trailer No. 813 came back into possession of Strickland); April 18, 1956 (when according to Navajo Strickland accepted trailer No. 1A32 in lieu of No. 813); and April 9, 1957 (when Navajo notified Strickland it would no longer pay rental on No. 813 or No. 1A32). It is Navajo's position, pleaded alternatively, that its obligation to pay rentals in connection with No. 813 terminated as of the dates named.

Strickland on the other hand says that the facts are undisputed as to the happenings on each of the three dates, and as a matter of law, the facts do not have the legal effect of terminating Navajo's liability. Strickland concedes that had Navajo offered $4,000 on April 9, 1957 Navajo would have done all it could to terminate the bailment of No. 813 and its obligation to pay any further rentals would have ended; but Navajo did not tender such performance, so according to Strickland Navajo's refusal to pay any further rentals did not have the effect of terminating the lease contract, which continued in effect and is still in effect.

■ It may be, as appellant says, that the facts in this case in the main are undisputed. But as we see it the inferences fairly to be made raise questions of fact. We therefore overrule appellant's fifth point.

In its eighth point appellant says that even if the trial court were correct in assessing appellant's damages at the value of the trailer on April 9, 1957 the court erred in not allowing interest from that date. We have held that the court was not correct in so assessing the damages, so the point becomes moot in the present condition of the record.

In its ninth and eleventh points appellant says that (9) the court erred in failing to render a net judgment in favor of appellant and (11) erred also in sustaining appellee's motion for instructed verdict since the uncontroverted facts did not establish appellee's right to recover as a matter of

law and the fact issues must be submitted to the jury. We overrule the ninth point and sustain the eleventh point.

■ In its tenth point appellant complains that the court erred in assessing appellant with one-half the court costs. Since we are reversing the court's judgment and remanding the cause for another trial we think it will be proper to assess the costs against the loser in the next trial. Of course the costs of this appeal will be assessed against appellee since appellant has succeeded in causing the judgment of the trial court to be reversed on appeal.

## APPELLEE'S CROSS-POINTS

Appellee presents seven cross-points.

■ Appellant has filed a motion asking that appellee's cross-points be stricken because (1) appellee by filing a motion for instructed verdict invited the error of the court in instructing the verdict; (2) insofar as appellee attempts to reverse the trial court's action in denying appellee any recovery for rental on Navajo trailer No. 57, such action is not reviewable because appellee failed to perfect on appeal from this divisible portion of the judgment.

Navajo's cross-action is in two parts. In the first part Navajo sought recovery for the items of $3,984 and $4,728, which sums were wrongfully deducted by Strickland from its account with Navajo. The court awarded Navajo judgment on this part of its cross-action.

In the second part Navajo sought recovery of the sum of $4,880 alleged to be rentals due by Strickland on Navajo's trailer No. 57. The court denied Navajo a recovery on this item.

We have concluded that appellant's motion to strike appellee's cross-points should be and it is hereby overruled.

Appellee's first cross-point alleges error of the court in not entering judgment for appellee for $13,592. This would have in-

cluded the sum of $2,936 for rentals alleged to be due Navajo as rentals on Navajo's trailer No. 57.

Appellee's second and third points allege error of the court (2) in not awarding appellee the sum of $4,880, the amount of rentals alleged to be due on trailer No. 57; and (3) in holding as a matter of law that appellee was not entitled to recover rental on Navajo's No. 57 because fact issues were raised as to the right of recovery.

Appellee's first three cross-points involve the court's refusal to allow Navajo any recovery in its cross-action for rentals alleged to be due by Strickland on Navajo's trailer No. 57. If this was error it was invited error. Appellee's motion for instructed verdict did not ask for any recovery for rental allegedly due on trailer No. 57. It sought an instructed verdict for $4,712, figured as follows: wrongfully withheld by Strickland were sums of $3,984 and $4,728—a total of $8,712; credit Strickland with $4,000 (the stipulated value of No. 813); this would leave a net amount due Navajo of $4,712. The last named amount was the exact amount of the judgment entered by the trial court.

In its brief appellee says that at the conclusion of the testimony the trial court indicated that if a motion for directed verdict were filed in a certain manner it would be sustained. This suggested motion would deny appellee any recovery for rentals on trailer No. 57. Appellee says that with some hesitancy the motion, as suggested, was made. In its argument to the court on the motion appellee stated that for the purpose of the motion only and in the interest of ending the controversy appellee asked that the motion be sustained. However, appellee did state that it was reserving all rights should the court overrule the motion. The court sustained appellee's motion and judgment was accordingly rendered for appellee for $4,712. The judgment complies with appellee's motion for instructed verdict.

Appellee, having filed the motion and asked the court to sustain it, is not now in position to complain of the court's action. Rogge v. Gulf Oil Corp., Tex.Civ. App., 351 S.W.2d 565; Allison v. Simmons, Tex.Civ.App., 306 S.W.2d 206, 210; Northeast Texas Motor Lines v. Hodges, 138 Tex. 280, 158 S.W.2d 487; Whitehead v. Traders & Gen. Ins. Co., Tex.Civ. App., 128 S.W.2d 429, 432; Posey v. Plains Pipe Line Co., Tex.Civ.App., 39 S.W.2d 1100; 5 C.J.S. Appeal and Error §§ 1510, 1511, pp. 949, 953. Appellee's first three cross-points are overruled.

In its fourth, fifth, sixth and seventh cross-points appellee complains of (4) the award of a recovery of damages on the theory of conversion, (5) allowing Strickland any sum for damages, (6) the failure to allow interest at 6 per cent on $8,712 and (7) the failure to tax all costs against appellant. All but the last of these complaints come within the invited error doctrine. As to the seventh cross-point, the proper taxing of costs in the trial court must await the final outcome of the suit in the trial court. Appellee's fourth, fifth, sixth and seventh cross-points are overruled.

The record discloses that appellee filed a motion for the appointment of a master in chancery in this case. The motion was overruled.

The areas of dispute as disclosed by the record, both of fact and of law, are so numerous and complicated, and the areas of uncertainty are so many that we consider this an exceptional case under Rule 171, T.R.C.P. We believe good cause exists for the appointment of a master in chancery. In our opinion it will be difficult indeed, if not impossible, for a jury to find its way to a correct verdict through the maze of facts and figures presented by the record. Therefore we recommend, though we do not direct, that a master in chancery be appointed and that the person ap-

pointed preferably be both an accountant and an attorney-at-law.

The judgment against appellant Strickland is reversed and the cause remanded for another trial. The judgment denying appellee Navajo recovery on its cross-action for alleged rentals due on trailer No. 57 is affirmed.

Reversed in part and affirmed in part.

## ON REHEARING

Appellant and appellee have each filed a motion for rehearing.

In its motion appellee disagrees with our statement with reference to the transfer receipts where we said, "If any of the provisions of the alleged receipts must be supplied by parol, the contract is an oral contract." We must admit that the statement is not well phrased and requires clarification and amplification.

As pointed out in our original opinion appellee does not rely on all the provisions of the receipts. Notwithstanding the fact that the receipts call for rentals at the rate of $8.00 per day for the first fourteen days and $10.00 per day for each day thereafter, appellee presented testimony that the agreement was that only $8.00 per day would be charged regardless of the length of time appellee might retain possession of a leased trailer. Appellee cannot be permitted to accept the favorable terms of the written documents, but reject the unfavorable terms. There is no pleading or claim of fraud, accident, mistake, or ambiguity in regard to the written receipts. In the absence of such pleadings the parol testimony would not properly be admissible to support appellee's contention, for such testimony would amount to an attempt to vary the terms of a written contract by parol evidence.

Is there any theory or circumstance, then, under which such parol evidence may properly be received? Any oral change in a written contract, if permissible, constitutes a modification of the written contract and really amounts to the making of a new contract which is oral.

Our view is well illustrated by the situation presented in Luglan v. Tomlin, 287 S.W.2d 188, cited in our opinion. The San Antonio Court of Civil Appeals, speaking through Chief Justice Murray, said:

"The general rule is that where a contract is not required to be in writing the parties may subsequently enter into an oral contract modifying and changing the terms of the written contract. The written contract is thereby rescinded and the rights of the parties are thereafter determinable by the terms of the subsequent oral agreement. (Citing authorities)

"Here the original plans and specifications were changed to such an extent that a new plan had to be drawn, but the specifications were not re-written. Oral agreements for the changes in the specifications were relied upon. Under such circumstances the contract becomes an oral one and any claim arising under such a contract is governed by the two-year statute of limitation."

Appellee next complains of our holding that there was no evidence that Strickland was a party to the alleged oral agreement between Merchants, Garrett and Navajo whereby Merchants' trailer No. 1A32 was to be turned over to Garrett, then to Navajo, then to Strickland, in lieu of trailer 813. Appellee contends that Exhibits Nos. 13 and 10 are evidence that Strickland was a party to the agreement.

Exhibit No. 13 is a letter written by Jack Johnson, cost accountant of Navajo, to George E. Wiard of Merchants. In the letter Johnson tells Wiard of Merchants that Strickland was a party to the agreement. The letter is hearsay and amounts to no evidence at all to support appellee's view even if admitted without objection. Texas Co. v. Lee, 138 Tex. 167,

157 S.W.2d 628, 631; Emerson v. Mills, 83 Tex. 385, 18 S.W. 805; Williams v. Thetford, Tex.Civ.App., 301 S.W.2d 954. It is not a letter from or by anyone connected with Strickland, so it cannot be construed as an admission. Warren v. Fredericks, 76 Tex. 647, 13 S.W. 643, 645; Burleson & Baker v. Sugarland Industries, Tex.Civ.App., 240 S.W. 669; 31A C.J.S. Evidence § 321, p. 816.

Exhibit No. 10 is a letter from John W. Maxwell, general manager of Strickland, to Robert L. Cohen, vice-president of Navajo. In this letter Maxwell states:

"In the third paragraph of your letter, you state that I was contacted and agreed to accept this trailer /trailer 1A32/ in place of 813. This is not so. I was not contacted nor can I find anyone else in our general office who was contacted about this."

Appellee further says that we erred in not holding that the 813 bailment contract terminated because of the impossibility of performance by Navajo. The basis of this claim is this: since Strickland had already received trailer 813 from Merchants in a transfer there was no way possible for Navajo to redeliver 813 to Strickland.

■ It is in the record that the master contract provided for the return of the leased trailer, *or the delivery of another trailer acceptable to the lender in lieu of the original trailer*. We cannot say that the evidence in the record before us would support a holding as a matter of law that it was impossible for Navajo to have tendered some trailer other than 813 which would have been acceptable to Strickland in lieu of 813. Therefore we cannot say as a matter of law that the contract in question terminated because of the impossibility of performance by Navajo.

■ Appellee attacks our holding that appellee was in no position to stand on

the A.T.A. regional contract to support the application of the four-year statute of limitations. Appellee is relying on a reference in the transfer receipts to the A.T.A. regional contract. As indicated in our discussion of the receipts earlier in this opinion, it is our view that in the present state of the record appellee cannot rely on the receipts as written contracts. For the reasons there stated we hold that the A.T.A. contract when incorporated into an oral contract by reference cannot make the four-year statute applicable.

Appellee urges us to "give some guide lines, rather than leave unanswered, the question of the maximum recovery to which Strickland would be entitled." We cannot comply with appellee's request. We do not know what answers may ultimately be found to the fact questions presented by the present record; nor can we anticipate what amended pleadings may hereafter possibly be filed, or what additional testimony may possibly be presented in another trial. In the absence of such information we shall not attempt to say what course or courses this controversy may or should take.

■ Appellee in another point says we should not assess all the costs against appellee since we affirmed in part and reversed in part. However, we must point out that we affirmed only that part of the judgment denying appellee a recovery on its cross-action claim in regard to trailer No. 57 and reversed the part of the judgment awarding any recovery against Strickland.

Appellee's motion for rehearing is overruled.

We have considered all the matters presented in appellant's motion for rehearing. Appellant's motion for rehearing is overruled.

Overruled.