**Roy W. BELL, Appellant,**

v.

**Libbie D. BELL, Appellee.**

**No. 16689.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 15, 1976.

Rehearing Denied Aug. 12, 1976.

Garrett & Letbetter, Tom R. Letbetter, George Payne and Max Garrett, Houston, for appellant.

Franklin R. Navarro, Houston, for appellee.

PEDEN, Justice.

This is an appeal from the granting of a divorce to the plaintiff, Mrs. Libbie Bell, on the grounds of insupportability. Dr. Bell had filed a cross-action on the same grounds and had later amended it to allege that Mrs. Bell had committed adultery during the marriage. A motion to strike the allegations of adultery was granted by the trial court and Dr. Bell was ordered not to introduce evidence of it. A court-appointed master in chancery held hearings and reported his findings. The appellant filed exceptions to the master's report but agreed to have the trial court, sitting without a jury, enter a decree dissolving the marriage and dividing the property of the parties. The court filed findings of fact and conclusions of law.

Dr. Bell contends in his first three points of error that the court erred: (1) in striking his pleading of adultery because he had a right to plead and prove his statutory grounds for divorce, (2) in refusing to consider evidence of adultery because it would be relevant to division of the property, and (3) in awarding an attorney's fee to Mrs. Bell's attorney without considering evidence of adultery.

After Dr. Bell first pleaded adultery, the trial court required him to re-plead and allege the specific dates in question. His amended pleading alleged ten specific dates, the first of which was fourteen days after Mrs. Bell had filed this suit. The court made findings of fact that the allegations of adultery reflected that the alleged conduct occurred after the separation and filing of the suit, that there was no claimed relation to the original asserted grounds for divorce and no claim or pleading that the alleged adultery was cumulative of conduct of the parties prior to the separation. The court relied solely on the pleaded grounds for divorce before the separation and stated that in dividing the property of the parties he took into consideration, among other things, the grounds for divorce pleaded by the parties.

Mrs. Bell denied the allegation in question and contends that when both parties are seeking divorce on primary grounds of no fault or cruel treatment it is not error for the trial judge to eliminate allegations of adultery as an added ground and thus to keep out the possibility of sordid testimony, particularly when it concerns conduct which is alleged to have occurred after the parties have separated and both have sued. She cites *Baxla v. Baxla*, 522 S.W.2d 736 (Tex. Civ.App.1975, no writ) and *Cusack v. Cusack*, 491 S.W.2d 714 (Tex.Civ.App.1973, writ dism'd). The court in *Baxla*, discussing no fault provisions in various state statutes, stated:

"It is, however, clear that the statutes have as their goal the abolition of fault as a requirement for granting divorces. It is also manifestly clear from the legislative history of many, if not all, of the statutes, that the purpose and intent of the legislatures of the various states, including Texas, is to abolish the necessity of presenting sordid and ugly details of conduct on the part of either spouse to the marriage in order to obtain a decree of divorce."

The court in *Cusack* stated:

"It also occurs to us that § 3.01 of the Code was incorporated therein as a new, independent and additional ground of divorce to render unnecessary the revealing to public gaze of sordid events that have come to mar two otherwise happy lives."

■ Section 3.01 of the Family Code provides that a divorce may be decreed without regard to fault, but Section 3.03 states that a divorce may be decreed in favor of one spouse if the other spouse has committed adultery. The ground is not limited to adultery committed before the separation of the parties.

■ "Adultery," as used in a divorce proceeding, means the voluntary sexual intercourse of a married person with one not the husband or wife of the offender. *Lawler v. Lawler*, 15 S.W.2d 684 (Tex.Civ.App.1929, no writ).

Rule 63, Texas Rules of Civil Procedure, permits parties to amend their pleadings as long as such action does not operate as a surprise to the opposite party.

Mrs. Bell further argues that if the trial judge erred in striking the pleading and excluding the evidence in question the error was harmless because there is no reason to believe that if the evidence had been admitted the trial court would have granted a divorce to the appellant on the ground of adultery instead of granting a no-fault divorce to her; further, that the appellant failed to discharge his burden of showing that had it been admitted the court would probably have divided the property in a different manner.

■ We conclude that the trial court erred in excluding the allegations and evidence of adultery and in failing to consider them in connection with the division of the community property. In dividing the estate of the parties in a manner that the court deems just and right, it considers all the evidence. "Fault in breaking up the marriage and the benefits the innocent spouse would have received from a continuation of the marriage are factors a court may consider in making a division of property, but they are not the only factors which a court may consider." *Hooper v. Hooper*, 403 S.W.2d 215 (Tex.Civ.App.1966, writ dism.); *Cooper v. Cooper*, 513 S.W.2d 229 (Tex.Civ.App.1974, no writ). See also *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W.2d 21 (1923). "The attorney's fee is but a factor to be considered by the court in making an equitable division of the estate, considering the conditions and needs of the parties and all of the surrounding circumstances." *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002 (1950).

■ Having shown error, the appellant has the additional burden of showing, under Rule 434, T.R.C.P., that the exclusion of the evidence in question "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case . . . ." In deciding this question we consider the record as a whole. *Duncan v. Smith*, 393 S.W.2d 798 (Tex.1965).

■ After examining the entire record, we cannot say the exclusion of the evidence of adultery probably caused the rendition of an improper judgment. Had the husband been permitted to introduce the circumstantial evidence of adultery alleged to have occurred after both parties had filed pleadings based on insupportability, we cannot say the trial court would probably have awarded the husband any benefit in the division of the parties' estate as compensation to an innocent spouse for the fault of the wife in breaking up the marriage. The court may have divided the community estate unequally, but the husband's earning power is considerably greater than the wife's.

Dr. Bell contends in points of error four through ten that the court erred: (4) by abusing its discretion in appointing a master in chancery because this was not an exceptional case, (5) in overruling the motion to disqualify the master because he was guilty of unjudicious conduct and (6) because it was an abuse of discretion to fail to disqualify the master, (7) in awarding the master a fee because he should not have been appointed and (8) because he should have been removed, (9) in awarding the master a fee of $7,500 because the fee was not reasonable or necessary in this case, and (10) in entering judgment on behalf of the master against Dr. Bell for the fee of the master because under Rule 171, Texas Rules of Civil Procedure, the fee is to be taxed as costs.

■ The court's findings included:
"That because of numerous motions by both parties which caused many ancillary hearings, and because of the several pieces of property involved, including fractional interest ownership thereon, the nature of Respondent's business and relocation thereof, the numerous claims and counter claims of the parties as to the community and separate nature of the properties, real and personal, including Respondent's business, the value, worth

and extent thereof,—the Court felt it necessary and did appoint Master in Chancery."

Concerning the motion to remove the master, the court found that "the conduct of the master was not such as to necessitate his removal and that the master conducted the hearings without prejudice to either party." The appellant offered proof that the wife's attorney bought the master coffee and dessert while they visited with the wife for about an hour after one of the hearings before the master and on two other days. This may not have been prudent conduct on the part of either the master or the attorney for the wife, but we conclude, after viewing the entire record, that the trial judge did not err in declining to disqualify the master. The trial judge made his own decisions as to division of the estate of the parties based on the record and did not follow the master's findings or recommendations.

█ The trial court appointed the master on the appellee's motion. We agree with the appellant's complaint that he should not have been charged with the fee of the master. By timely objections and exceptions he has preserved any error in the charging of the master's fee.

Rule 171, Texas Rules of Civil Procedure, was drawn in part from Rule 53, Federal Rules of Civil Procedure,

"but with changes so extensive as to make the authority of federal decisions a problem to be determined on a case-by-case basis . . ."

"The appointment is thus an exceptional proceeding, for which there is no occasion when the matters in dispute are not complex. Examples of causes in which appointment has been found appropriate include . . .: divorce suits where the division of community and segregation of separate property is involved; and similar controversies of substantial complexity in which the increased expense of proceedings before a master will result in offsetting benefits to the parties and the state through a reduction in the complexities of trial. References are less fre-

quent in Texas than in jurisdictions where equity cases are tried without a jury, and an erroneous reference will hardly be reversible (though the error may be of importance in taxing costs), since the parties can preserve their rights to a full jury trial by exceptions to unsatisfactory findings." 3 McDonald, Texas Civil Practice 32, Discovery and Pretrial Procedure, § 10.17.1 (1970).

The first paragraph of Rule 171, T.R.C.P., begins: "The court may, in exceptional cases, for good cause appoint a master in chancery . . ." This paragraph was adopted from Article 2320, Vernon's Texas Civil Statutes. Paragraph (b) of Federal Rule 53 makes a similar provision:

"Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it."

█ The United States Supreme Court has said that the words "exception" and "exceptional" as used in the reference rule are not elastic terms with the trial court the sole judge of their elasticity. Litigants are entitled to a trial by the court in every suit, save where exceptional circumstances are shown. Congestion in itself is not such an exceptional circumstance as to warrant a reference to a master, nor the length of time a trial will take. The court further stated, in that antitrust suit, that the complexity of the issues of both fact and law is an impelling reason for trial before a regular, experienced trial judge rather than before a temporary substitute appointed on an ad hoc basis and ordinarily not experienced in judicial work. *La Buy v. Howes Leather Co.*, 352 U.S. 249 at 260, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957).

█ The trial court is not authorized under Texas Rule 171 to appoint a master in chancery in other than exceptional cases and not then except for good cause. *Creg-*

**438**

*lar v. Hyde,* 280 S.W.2d 783 (Tex.Civ.App. 1955, writ ref. n. r. e.).

*Attorney General's Opinion* H–609 (1975) was given in response to a letter calling attention to the extreme congestion existing in the domestic relations courts of Dallas County and inquiring whether salaried employees of the county could be made available for appointment as masters. They were to have been employed by the County Clerk to serve as fact-finders for the courts of domestic relations. The Attorney General's opinion expressed the belief that the Rule 171 requirements of "exceptional case" and "good cause" prevent such a practice and cited these cases as ones considered exceptional by Texas appellate courts: *Housing Authority of the City of Dallas v. Hubbell,* 325 S.W.2d 880 (Tex.Civ. App.1959, writ ref. n. r. e.) and *Strickland Transportation Co. v. Navajo Freight Lines, Inc.,* 387 S.W.2d 720 (Tex.Civ.App.1964, no writ). The opinion concluded with this statement: "Court congestion does not in itself make every case an exceptional case nor furnish good cause for such an appointment."

 The dockets of the courts of domestic relations in Harris County are heavily crowded, and it is clear that the time of those courts was saved by having a master receive the evidence in this case. We do not agree, however, that this case falls within the category of "exceptional" cases to which reference to a master is restricted by Rule 171. The reference to a master was error but does not require that the entire judgment be reversed, since the appellant could have had a jury trial on all unsatisfactory findings of the master. We hold that it was reversible error to require Dr. Bell to pay $7,500 as a master's fee to have this case litigated. It is noteworthy that almost all of the opinions given in testimony by the wife's experts showed less equity in the properties than did the inventory filed by the husband. This fact could not have been ascertained before appointment of a master, but it was known before his fee was fixed at $7,500 and taxed against the husband.

The parties were mature adults. They lived together as husband and wife only about eighteen months and had been married about thirty-four months when the divorce was granted. No children were involved. The wife was not employed during the marriage; the husband is a dentist and moved his practice during the marriage, intending to make it more specialized. As the trial judge noted, the husband's earning capacity is far greater than the wife's. After an ancillary hearing the husband was required to pay temporary alimony of $1,000 per month and the payments on the parties' home and an automobile; she was awarded the use of them. Both parties were temporarily enjoined from certain activities and were required to file complete inventories. A jury fee was paid.

On motion of the appellee, the trial court appointed an attorney as master to receive and report evidence as to the estate of the parties, community and separate. The trial court found that the parties' community estate consisted of clothing, personal effects and specified items of the following: furniture and furnishings, two automobiles, two club memberships, equity in a townhouse, shares of stock in a bank, an interest in a restaurant, interests in each of three tracts of land, and a dental practice (including physical assets, leasehold improvements, and accounts receivable). The husband's separate estate was found to consist of clothing, personal effects, and specified items of the following: sports equipment, furniture and furnishings, an old automobile, various insurance policies, a rent house, books, and a few shares of stock. The master did not evaluate the specified items, but the trial judge did. The total of his evaluations was $128,504.55 for the community estate and $28,683.50 for the husband's separate estate. The trial judge found that community funds were spent in relocating the husband's dental practice.

The trial judge confirmed in part the master's findings but modified them, substantially reducing his recommendation as to the awarding of property to the wife.

*Roberson v. Roberson,* 420 S.W.2d 495 (Tex.Civ.App.1967, writ ref. n. r. e.), was a divorce case. Reference to a master does not appear to have been opposed. The appellate court approved reference to a master, but the opinion shows that its facts were much more complex than those in our case and that it was an exceptional case.

■ Dr. Bell contends in points of error eleven through fourteen that the trial court erred in dividing the property of the parties (11) because such division was unjust, wrong and inequitable, (12) because there was no evidence to justify an unequal division of the property between the parties, (13) because there was no evidence to support the court's findings as to value of the Timbercrest property, the Forest Lake property, the Diary property, the townhouse, the Adams Apple 5% interest and the dental practice, (14) because the court's findings as to the value of those properties were so against the great weight and preponderance of the evidence as to be unjust and wrong.

Section 3.63 of the Texas Family Code provides:

"In a decree of divorce or annulment the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage."

The trial court is given wide discretion in disposing of the property of the parties, separate or community, and its action in the exercise of such discretion should be reversed on appeal only where an abuse of it is shown in that the disposition made of some property is manifestly unjust and unfair. *Hedtke v. Hedtke,* 112 Tex. 404, 248 S.W. 21 (1923); *Ex Parte Scott,* 133 Tex. 1, 123 S.W.2d 306 (Tex.1939); *Hailey v. Hailey,* 160 Tex. 372, 331 S.W.2d 299 (Tex. 1960). An equal division of the property is not required. In the exercise of its discretion, the court may consider, among other things, the age and physical condition of the parties, their relative need for future support, fault in breaking up the marriage, benefits the innocent spouse would have received from a continuation of the marriage, the size of the estate and the relative abilities of the parties. *Hudson v. Hudson,* 308 S.W.2d 140 (Tex.Civ.App.1957, no writ); *Duncan v. Duncan,* 374 S.W.2d 800 (Tex. Civ.App.1964, no writ); *Middlesworth v. Middlesworth,* 380 S.W.2d 790 (Tex.Civ.App. 1964, no writ); *Pickitt v. Pickitt,* 401 S.W.2d 846 (Tex.Civ.App.1966, no writ).

In our case the trial court stated in its findings of fact:

"In regard to the division of property, . . . the Court considered all facets of the case, to wit: the grounds of divorce based upon discord and conflict as pled by both parties in their original and amended pleadings, the parties and their particular circumstances, the relatively short period of marriage, the earning capacity of the parties, the community and separate nature of the properties both real and personal. There was considered by the Court the income of Respondent from his dental practice and in particular the relocation thereof and expenditures of community funds and effort incident thereto. There was no dispute of the fact that Respondent's earning capacity was far greater than that of Petitioner and that he had managed the income and handled the various and sundry investments during the marriage. The Court is mindful of the fact that some of the investments were successful and some were not successful. There was also considered by the Court testimony in regard to Petitioner's attorney's fees, the costs and expenditures made by both parties, and the master's fee."

The trial court placed these values on the community property he awarded to Mrs. Bell:

1. Value of equity in townhouse (Mrs. Bell assumes mortgage debt of $56,424.13) — $7,000.
2. Furniture — 5,089.
3. 1973 Oldsmobile — 3,500.

Dr. Bell was also ordered to pay:

| | | |
|---|---|---|
| 4. | Cash to Mrs. Bell | 20,000. |
| 5. | Attorney's fee of Mrs. Bell | 7,500. |
| | Total | $43,089. |

The court placed these values on the community property awarded to Dr. Bell:

| | |
|---|---|
| Timbercrest | $39,169. |
| Forest Lake | 12,666. |
| Diary property | 5,500. |
| Adams Apple | 6,120. |
| Shot guns | 200. |
| Commercial State Bank Stock | 4,400. |
| Membership, Riverbend Country Club | 1,500. |
| Membership, University Club | 350. |
| 1971 Cadillac | 1,800. |
| Dental Practice | 41,210. |
| Total | $112,915. |

Dr. Bell was ordered to pay:

| | |
|---|---|
| Cash to Mrs. Bell | $20,000. |
| Attorney's fee for Mrs. Bell | 7,500. |
| Master's fee | 7,500. |
| | −35,000. |
| | $77,915. |

Dr. Bell's share of the community property is further reduced by outstanding debts and notes payable. The divorce decree did not have the effect of releasing Mrs. Bell's liability as far as the creditors are concerned. Most of the debts were incurred in connection with Dr. Bell's dental practice and his investments, and the trial court apparently considered that he should assume the primary responsibility for paying them since he was awarded the practice and the investments. He does not complain by specific point of error that the trial court erred in requiring him, as between the parties, to pay these debts. The debts are not property or a charge on property. We hold that the trial judge did not abuse his discretion in dividing the parties' estate unless the evidence was insufficient to support his findings as to the values assigned; we look now to those values.

Dr. Bell contends the court erred in finding these values: (1) Timbercrest, $39,169; (2) Forest Lake, $12,666; (3) Diary property, $5,500; (4) Adams Apple, $6,120 and (5) the dental practice, $41,210.55. These were the only items of community property whose values were seriously disputed. The values found by the trial judge as to the first three are those Dr. Bell gave in financial statements he filed with various banks. The value of the dental practice was obtained from Jack Rose, an expert witness. The trial judge apparently used only his values for physical assets (except office and dental supplies), leasehold improvements, and accounts receivable, less "liens and payables." Good will was not included. Mr. Woodyard, a business broker and appraiser, testified that the market value of Dr. Bell's Adams Apple interest was $23,400. Dr. Bell stated in his inventory dated October 2, 1974, that the value of his interest in the Adams Apple was $15,000. In either his inventory or his financial statements he gave higher evaluations for the other assets in question than the trial judge found. Conversely, the expert witnesses called by the appellee gave lower evaluations. The general rule is that a party does not vouch for the accuracy of opinion evidence and is not bound by what an expert says. *West v. Houston Lighting & Power Co.*, 483 S.W.2d 352 (Tex.Civ.App.1972, no writ) and cases cited. We hold that the evidence supports the evaluations in question.

Dr. Bell's 15th point of error is that the trial court erred "in failing to consider reimbursement of the separate property estate of respondent for separate property expenditures made by him with regard to the property to be divided between the parties." He says that prior to the marriage he had the following separate property that was not considered by the court: Union Bank balance of $5,777.50, Memorial Bank balance of $1,474.98, $3,700 cash in a safety deposit box, Pinemont State Bank balance of $119, and accounts receivable from the dental practice of $26,179. Dr. Bell testified he had loans outstanding before the marriage of six or seven thousand dollars, that before his marriage to Libbie Bell he acquired a house on Pinerock, and that he and Libbie Bell lived there for only about six months before he sold it for $55,400. He deposited $35,300 of the proceeds in a new account styled R. W. Bell, Separate Account. He admits that this money was

used for expenses or lost in investments. We hold that the appellant has not shown error under this point.

The appellant's last point of error is that the trial court erred in placing a lien on his property to secure payment of the $20,000 to the appellee because it includes his separate property and thus amounts to the taking of an interest in it, in violation of the Constitution and laws of the State of Texas. We overrule this point. "It has been held that an equitable lien may be imposed on the separate property of the husband to secure the payment of a money judgment as part of the wife's interest in the total property of the parties." *In Re Marriage of Jackson*, 506 S.W.2d 261, 267 (Tex.Civ.App.1974, writ dis.) and cases cited therein.

The judgment of the trial court is in all things affirmed except as to the awarding of a judgment for $7,500 in favor of the master against Dr. Bell. We sever this provision of the judgment. Rule 171 provides that compensation of the master shall be taxed as costs of suit. Under Rule 131 the successful party recovers costs of his adversary, but Rule 141 provides that the court may, for good cause stated in the record, adjudge the costs otherwise. Finding that the trial court abused its discretion in taxing the master's fee as costs against Dr. Bell, but noting that the appellee invited the error of submitting to a master the division of the parties' estate, we remand to the trial court the taxing of the master's fee.

By "motion for rehearing" the appellant requests only a clarification of our holding that he should not have been charged with the fee of the master. Our conclusion was that no part of the master's fee should have been taxed to or charged against him. The motion for rehearing is overruled.